**William D. BOGGESS et al., Plaintiffs,**

v.

**O. T. HOGAN et al., Defendants.**

**No. 69 C 2267.**

United States District Court,
N. D. Illinois, E. D.
May 17, 1971.

George F. Barrett and Edward S. Jackson, Chicago, Ill., for plaintiffs.

Thomas A. Reynolds, Jr., Bruce L. Bower, and Richard L. Williams III, of Winston, Strawn, Smith & Patterson, Chicago, Ill., for defendants Teledyne, Inc., Walter H. Lenhard, Jr. & Teledyne Financial Corp.

Albert E. Jenner, Jr., Charles J. O'Laughlin, and Keith F. Bode, Jenner & Block, Chicago, Ill., for defendants O. T. Hogan and Almore H. Teschke.

## MEMORANDUM AND ORDER ON TELEDYNE DEFENDANTS' MOTION TO DISMISS

ROBSON, Chief Judge.

The defendants Walter H. Lenhard, Jr., Teledyne, Inc., and Teledyne Financial Corporation (the Teledyne defendants) move this court to dismiss the First Amended Complaint on the grounds that it fails to state a claim under the federal securities laws, and is devoid of any other basis for federal jurisdiction. For the reasons set forth below, this court is of the opinion the motion should be denied.

## THE PLEADINGS

This is a class action brought by three minority shareholders of Unicoa Corporation (Unicoa), derivatively on behalf of that corporation, as well as on behalf of all other shareholders of Unicoa similarly situated. Plaintiffs acquired their shares of Unicoa in exchange for an equal number of shares of United Insurance Company of America (United). Unicoa now owns all of the issued and outstanding shares of United. The defendant Teledyne, Inc., through its wholly-owned subsidiary Teledyne Financial Corporation, owns approximately 52 per cent of the issued and outstanding shares of Unicoa.

Count I of the three-count First Amended Complaint charges that the defendants violated Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder, by engaging in fraudulent and manipulative conduct to effect the Teledyne defendants' scheme to purchase control of United, and then to exploit United for the benefit of Teledyne's conglomerate insurance interests. The plaintiffs allege that they were shareholders of United in early June, 1967, when Teledyne instituted its program seeking to purchase the controlling interest of United.[1] The defendant O. T. Hogan was chairman of the board of directors and a major shareholder of United. The defendant Almore H. Teschke was a member of the board, as well as vice-president, general counsel, and a major shareholder of United.[2] Teledyne's first tender offer, which proved unsuccessful, was actively opposed by United's board of directors who sent letters by mail to shareholders of United, dissuading them from accepting the tender offer. Count I alleges that Teledyne then entered a secret agreement with the defendants Hogan and Teschke for the purpose of inducing United shareholders to accept a contem-

---

1. The plaintiffs allege that they were shareholders of United and, subsequently, Unicoa during all transactions here complained of.

2. The defendants Hogan and Teschke have not joined in the motion to dismiss.

plated second tender offer. In exchange for their support, Teledyne allegedly promised to purchase from Hogan and Teschke all of their holdings in a third corporation, United Fire Insurance Company (United Fire), at a fixed price.[3] The defendants failed to disclose this scheme to the representative plaintiffs or to other minority shareholders of United. The plaintiffs assert that they were led to believe that in supporting Teledyne's tender offer, the defendants Hogan and Teschke were acting in United's best interests and not for reasons of personal gain incompatible with their fiduciary duties. With the support of Hogan and Teschke, Teledyne's alleged scheme was successful and it acquired 52 per cent of United's outstanding shares. Upon acquiring control of United, Teledyne executed the plan of exchange between United and Unicoa approved by United's shareholders in April, 1968, during the period when the alleged scheme was operative.

In Counts II and III, the plaintiffs allege that since September 1, 1968, when the plan of exchange was effected, the board of directors of Unicoa have refused to pay dividends in order to depress the market value of plaintiffs' stock; that the assets of Unicoa have been used to finance, support and maintain the Teledyne conglomerate structure; and that Teledyne has in other enumerated ways "raided" the assets of Unicoa for the benefit of Teledyne. Counts II and III invoke the pendent jurisdiction of this court for redress of these alleged breaches of fiduciary duties owed to Unicoa and its minority shareholders under state law by the various defendants.

The relief sought in Count I includes imposition of a constructive trust upon the United Fire stock belonging to the defendants Hogan and Teschke for the benefit of plaintiffs and all other share-

holders of Unicoa except Teledyne; specific enforcement of the secret agreement by Teledyne to purchase these shares at the fixed price alleged; plaintiffs' attorneys fees and costs; disbursement of the remaining proceeds to all shareholders of Unicoa except Teledyne; and "such other Decrees, Judgments, and Orders granting such other and further relief as the Court may deem appropriate, including the disgorging of profits and other moneys, consideration, or benefits made or obtained by the defendants as a result of their unlawful and wrongful activities."[4] In Count II, plaintiffs additionally seek to enjoin Teledyne from using United's assets to further its conglomerate structure, and for damages due to the impairment of their equity interest in Unicoa by Teledyne's allegedly fraudulent dividend and investment policies. Count III asks this court to declare that Teledyne has preempted certain corporate opportunities belonging to Unicoa, and seeks to divest Teledyne of those assets. Finally, plaintiffs seek in Count III to enjoin Teledyne from "acquiring other insurance companies."

## THE "BIRNBAUM RULE"

The Teledyne defendants' principal thrust of attack is directed to the legal sufficiency of Count I, the claim upon which federal jurisdiction over this action must be determined. It is undisputed that none of the class-plaintiffs actually sold their United stock in response to Teledyne's second tender offer or in reliance upon the representations made by Hogan and Teschke that the tender offer was in United's best interests. On that basis, the Teledyne defendants invoke the so-called "Birnbaum Rule," based upon a decision by the United States Court of Appeals for the Second Circuit. *Birnbaum v. Newport Steel,* 193 F.2d 461, 464 (2nd Cir. 1952),

---

3. The defendants Hogan and Teschke have admitted their alleged secret agreement with Teledyne and have in fact filed suit in this court to specifically enforce that agreement. See *Hogan et al. v. Teledyne et al.,* 328 F.Supp. 1043 (N.D.Ill. 1971).

4. First Amended Complaint, p. 8.

cert. den. 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). *See also* Iroquois Industries, Inc. v. Syracuse China Corporation, 417 F.2d 963, 966 (2nd Cir. 1969), cert. den. 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970); Greenstein v. Paul, 400 F.2d 580, 581 (2nd Cir. 1968). The *Birnbaum* court construed the language of Section 10(b) and Rule 10b–5 prohibiting the use of manipulative and deceptive devices "in connection with the purchase or sale of any security" to require that a plaintiff be an actual purchaser or seller of securities in order to have "standing" to sue under that provision. Fortunately, within the framework of the factual allegations and decisional authority applicable here, this court need not resolve the parties' disputed views with respect to the merits or present vitality of *Birnbaum's* narrow interpretation of Section 10(b) and Rule 10b–5.[6]

While indicating its nominal recognition of the *Birnbaum* rule,[7] the United States Court of Appeals for the Seventh Circuit has broadly defined those persons eligible to maintain an action under Section 10(b) and Rule 10b–5. In Dasho v. Susquehanna Corp., 380 F.2d 262 (7th Cir. 1967), cert. den. sub. nom. Bard v. Dasho, 389 U.S. 977, 88 S.Ct. 480, 19 L.Ed.2d 470 (1967), a statutory merger was ruled to be a purchase and sale of securities within the antifraud provisions of the federal securities laws.

In a well-reasoned concurring opinion, it was observed that:

"Neat corporate theory would dictate that a statutory merger involves no sale of the shares or assets of merging corporations, but in the light of the purpose of the securities and exchange acts to protect the investing public, it seems reasonable that the concept of sale in these acts may encompass the various modifications in rights which are produced by merger." 380 F.2d at 268 (concurring opinion of Fairchild and Cummings, JJ.)

"The argument that the transformation of rights occurring upon statutory merger is a distinct corporate phenomenon which does not involve purchase and sale of securities has some appeal, but in view of the objectives of the securities and the exchange acts, it seems to me better to recognize, for the purpose of the antifraud provisions, that sales and purchases are involved. This view does no violence to the statutory language, and is the present interpretation of the body which is responsible for the administration of the acts." 380 F.2d at 269 (concurring opinion of Fairchild and Cummings, JJ.)[8]

Later, in a derivative action brought by minority shareholders, the Seventh Circuit decided that a merger of an allegedly injured corporation with the cor-

---

6. Most commentators are of the opinion that the *Birnbaum* decision was not dictated by the express language of Section 10(b) or Rule 10b–5; but rather *Birnbaum* has encouraged mechanical application of a purchaser-seller requirement producing results contrary to the purposes for which that legislation was enacted, i. e., to protect the investing public from fraudulent securities transactions. *See, e. g.,* Comment, Inroads on the Necessity for a Consummated Purchase or Sale under 10b–5, 1969 Duke L.J. 349 (1969); Comment, The Purchaser-Seller Rule: An Archaic Tool for Determining Standing under Rule 10b–5, 56 Geo.L.J. 1177 (1968); Massey, The Purchaser-Seller *Limitation* to SEC Rule 10b–5, 53 Corn.L.Rev. 684 (1968); Lowenfels, The Demise of the Birnbaum Doctrine: A

New Era for Rule 10b–5, 54 Va.L.Rev. 268 (1968); Leech, Transactions in Corporate Control, 104 U.Pa.L.Rev. 725 (1956). See also The Inability to Obtain Analytical Precision Where Standing to Sue is Involved, 20 Buffalo L.Rev. 93 (1970).

7. *See, e. g.,* Jachimiec v. Schenley Industries, No. 15027 (7th Cir. 1965), a one-page unreported *per curiam* opinion heavily relied upon by the Teledyne defendants.

8. The Seventh Circuit's flexible approach was cited by the Supreme Court with approval in SEC v. National Securities, Inc., 393 U.S. 453, 467–468, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), where an exchange of stock pursuant to a merger was ruled to be a "purchase."

poration to whom the defendant-insiders sold their stock at an inflated price constituted a "sale" by the injured corporation which, upon a proper showing, could be enjoined. Condon v. Richardson, 411 F.2d 489 (7th Cir. 1969). In yet another decision, the Seventh Circuit was presented with a factual situation where minority shareholders complained that they had been misled by the defendant-insiders' failure to disclose information concerning the latters' relationship with the other party to a proposed exchange of shares pursuant to a reorganization plan. Swanson v. American Consumer Industries, Inc., 415 F.2d 1326 (7th Cir. 1969). The minority shareholders in the Swanson case, like the minority shareholders of United, did not possess sufficient voting strength to successfully oppose the reorganization plan even had the defendants disclosed their conflict of interest and the possibility of injury to the corporation by reason of the transaction. Citing SEC v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564 (1969), the Swanson court ruled that:

> " 'The gravamen of the complaint was the misrepresentation, not the merger.' Thus, unlike Section 14 cases, we are not concerned primarily with whether the merger or sale of assets could have been effected absent the deceptive statements, but rather with injury to shareholders or to the corporations which results from the use of deceptive devices proscribed by Rule 10b–5. * * * The power to effect a given result certainly does not negative all possibility of injury resulting from the fraudulent or manipulative use of that power." 415 F.2d at 1331–1332.

Following this reasoning, the Swanson court concluded that:

> " * * * [T]he fraudulent substitution of shareholder status in one company for the same status in another may constitute a cognizable legal injury in and of itself." 415 F.2d at 1332.

■■■ Viewing the allegations of Count I as true for purposes of this motion, a claim redressable under Section 10(b) and Rule 10b–5 is stated against the Teledyne defendants by these minority shareholders of Unicoa, individually and derivatively. Teledyne's second tender offer failed to disclose the fact that United's insiders were secretly offered a premium inducing them to breach their fiduciary duties to United and all its shareholders. The claim that Teledyne failed to reveal its relationship with United's insiders, as well as its plans to exploit the assets and business of United for the benefit of Teledyne's own conglomerate insurance interests, states an injury to United and its shareholders comparable to that set forth in the Swanson complaint. Moreover, Teledyne's nondisclosure of the conflict of interest and self-dealing inherent in its relationship with United's insiders, and the potential harm to United allegedly tainting its second tender offer, precluded the minority shareholders of United from exercising available legal prerogatives in order to protect the best interests of United and all its shareholders. These plaintiffs might well have petitioned the court to enjoin Teledyne from proceeding with the allegedly fraudulent second tender offer. E. g., Moore v. Greatamerica Corp., 274 F.Supp. 490 (N.D.Ohio 1967).[9] It is implicit in

---

9. The Moore court quoted the following pertinent statement made by the Chairman of the Securities and Exchange Commission concerning the requirement of full disclosure with respect to tender offers:

> " 'Information about a potential change in control can be particularly essential to an informed decision. A change in control brings with it the possibility of different operating results

and different investment results, or perhaps the possibility of realizing on a company's liquidation value. This may be either good, or bad, depending on the facts and circumstances involved. But no investor can reach a conclusion on the possible effects of a change in control until the facts are available to him.' " 274 F.Supp. at 493.

See also Comment, 81 Harv.L.Rev. 501 (1967).

Count I that the Teledyne defendants devised the alleged scheme to defraud United and its minority shareholders before United's insiders obtained approval of the plan of exchange with Unicoa. Teledyne effected the plan once it acquired control over United. Certainly the deception with respect to the alleged clandestine arrangement between Teledyne and United's insiders, as well as Teledyne's alleged plan to loot United once it acquired control, could be shown to taint shareholder approval of the plan of exchange. Whether or not this court characterizes the transaction as a "purchase and sale" or "forced participation," the manipulation and deception allegedly perpetrated by Teledyne in its second tender offer are sufficient to state a claim of "fraudulent substitution of shareholder status in one company for the same status in another," a cognizable injury under Section 10(b) and Rule 10b–5. SEC v. National Securities, Inc., *supra*; Swanson v. American Consumer Industries, Inc., *supra*; *Cf.*, Schoenbaum v. Firstbrook, 405 F.2d 200, 219 (2nd Cir. 1968). *See also* Bloomenthal, From Birnbaum to Schoenbaum: The Exchange Act and Self-Aggrandizement, 15 N.Y.L.F. 332, 367–368 (1969). In short, the conduct of the Teledyne defendants alleged in Count I would, if proven, constitute a fraud upon United and its minority shareholders in connection with Teledyne's second tender offer and resulting in its acquisition of control over United. This conduct allegedly resulted in substantially altering the assets and business of United, thereby diluting the equity interests of its minority shareholders. This court is therefore of the opinion that the alleged conduct of the Teledyne defendants violates the letter and spirit of Section 10(b) and Rule 10b–5.

### THE PENDENT CLAIMS

Counts II and III involve alleged breaches of fiduciary duties by the various defendants relating to the transactions complained of in Count I. Since a "common nucleus of operative fact" clearly exists between the federal and nonfederal claims, this court will retain pendent jurisdiction over the nonfederal claims in the interests of judicial economy and convenience to the parties. United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Puma v. Marriott, 294 F.Supp. 1116 (D.Del.1969). *Cf.*, Scovill Manufacturing Co. v. Dateline Electric Co., Ltd., 319 F.Supp. 772, 776–777 (N.D.Ill.1970).

### THE "NON–ISSUES"

There remain a number of contentions advanced by the Teledyne defendants in support of their motion to dismiss which do not warrant lengthy discussion. These defendants assert that the acts complained of in Count I did not involve the use of the mails or other instrumentalities of interstate commerce, as required by Section 10(b). However, Count I specifically alleges that United's board of directors mailed letters to the plaintiffs urging them to oppose Teledyne's first tender offer. First Amended Complaint, p. 4. Since the defendants are citizens of several states, their use of the mails, or other means of interstate commerce, is implicit in the allegations of Count I. Although evidence at trial will be essential on this point, Count I alleges that the mails were used in some phase of the transactions sufficiently to sustain the jurisdiction of this court at this stage of the proceedings. *See* Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965); Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961); Northern Trust Co. v. Essaness Theatres Corp., 103 F.Supp. 954 (N.D.Ill. 1952).

The movants also attack that part of the plaintiffs' prayer for relief seeking to impose a constructive trust upon the United Fire stock of the defendants Hogan and Teschke, and further asking this court to specifically en-

force the latters' secret agreement with Teledyne, for the benefit of Unicoa and its minority shareholders. This is not the proper time to determine the appropriate form of remedy, should the plaintiffs prove their case. This court has broad powers of discretion in fashioning suitable relief in securities fraud cases, and to limit the court's alternatives at this stage of the litigation would be premature and unwise. The following language of the Supreme Court is particularly appropriate in the case at bar:

"Our finding that federal courts have the power to grant all necessary remedial relief [in a securities fraud case] is not to be construed as any indication of what we believe to be the necessary and appropriate relief in this case. We are concerned here only with a determination that federal jurisdiction for this purpose does exist. Whatever remedy is necessary must await the trial on the merits." J. I. Case Co. v. Borak, 377 U.S. 426, 435, 84 S.Ct. 1555, 1561, 12 L.Ed.2d 423 (1964).

By fragmenting the elements of an action under Section 10(b) and Rule 10b–5, the Teledyne defendants have also raised multiple, overlapping issues concerning "reliance," "causation," and "injury." They further attempt to dispose of complex and disputed factual issues by means of their motion to dismiss. As discussed above in some detail, the allegations of the First Amended Complaint, construed as true for purposes of this motion, are legally sufficient to state a claim over which this court has jurisdiction.

It is therefore ordered that the motion of the Teledyne defendants to dismiss this action be, and it is hereby denied.

The Teledyne defendants are directed to file their answer to the First Amended Complaint within twenty (20) days of the entry of this order.