**J. William WOLF et al., Plaintiffs-Appellants-Cross Appellees,**

**v.**

**Robert R. FRANK et al., Defendants-Appellees-Cross Appellants.**

No. 72–2534.

United States Court of Appeals, Fifth Circuit.

April 24, 1973.

Rehearing and Rehearing En Banc Denied June 5, 1973.

Richard B. Marx, Miami Beach, Fla., Irving M. Wolff, Miami, Fla., for defendants-appellees.

Howard W. Mazloff, Eugene C. Heiman, Miami, Fla., for plaintiffs-appellants.

Before RIVES, GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

This is an appeal and cross-appeal from a judgment of the United States District Court for the Southern District of Florida awarding plaintiffs, J. William Wolf and Pearl M. Wolf, shareholders of Industrial-Guaranty Bancorp (hereinafter "IGB"), individual and derivative relief from defendants, IGB, Robert R. Frank, Jack H. Stein, and John W. Roberts, Jr., for violations of the Securities Act of 1933, 15 U.S.C. § 77a et seq., and of the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq. Although not an overly complicated securities case, its presentation sometimes gives the appearance that the geometry of the case would defy the law that a straight line is the shortest distance between two points. Both plaintiffs and defendants appeal from numerous substantive and procedural aspects of the District Court's judgment, which deviate from the essentials of the decision. The only claim we find meritorious, however, is plaintiffs' argument that Mills v. Electric Auto-Lite Co., 1970, 396 U.S. 375, 90 S.Ct. 616, 24 L.

Ed.2d 593, entitles them to be reimbursed by IGB for the cost of maintaining this derivative claim. The District Court's order is therefore affirmed in all things but the denial of plaintiffs' plea for reimbursement for the costs of maintaining this action.

## I. THE OPERATIVE FACTS

The District Court made numerous and detailed findings of fact and conclusions of law that have greatly aided this Court in its resolution of this complex appeal. Not all of these findings and conclusions are involved in this appeal; thus, we here summarize only those matters necessary for an understanding of our disposition of the case.

In early 1969, plaintiff J. William Wolf began discussing with defendants Robert R. Frank and Jack H. Stein the possibility of his investing in IGB, a Florida corporation with its principal place of business in Florida. Defendants Frank, Stein, and Roberts [1] organized IGB with the intention of making it a bank holding company, and they served at all relevant times as officers and directors of IGB. Plaintiff repeatedly met with defendants, in various combinations, to discuss IGB. Prior to plaintiffs' initial purchase, defendants Stein and Frank represented to plaintiff that they were going to allow not more than fifteen of their friends to purchase shares in IGB before making a proposed public offering: They represented that everyone would pay $2.00 cash per share and that there would be no free stock or fringe benefits.[2] In reliance upon these and other representations concerning (1) an application by IGB to the Federal Reserve Board for approval as a bank holding company, (2) the acquisition plans of IGB, and (3) the progress of registration of IGB shares with the Florida Securities Commission, plaintiffs purchased 37,500 shares of IGB stock for $75,000.00 between July 28, 1969 and October 8, 1969. No registration statement was then in effect as to those securities.

As early as July 24, 1969, prior to the initial purchase of IGB stock, plaintiff began inquiring among his friends about resales to them of the IGB stock that was to be purchased. During the six-month period beginning in late July, 1969, plaintiffs sold at least 23,000 of their 37,500 shares to approximately fourteen persons in various parts of the United States at prices ranging from $2.00 to $5.00 per share. In these transactions plaintiffs realized a total of $95,000.00, some $20,000 more than they had paid for all of their IGB stock.

In fact, an application for approval as a bank holding company was never filed on behalf of IGB. Furthermore, defendants did not pay $2.00 cash per share when they acquired their own stock interest in IGB. First, in September, 1969, defendants exchanged 19,826 shares of stock in the National Industrial Bank [hereinafter NIB] with IGB for 346,995 newly issued shares of IGB stock, pursuant to an exchange ratio computed by defendant Roberts. At the exchange value of $2.00 per share, the IGB stock acquired in the exchange by defendants was worth $693,910.00. The NIB stock that the corporation received from defendants in exchange was worth considerably less. It had been purchased by defendants in January, 1968 for $198,260.00, or $10.00 per share, and was selling for $10.00 per share in October, 1969. Second, on January 16, 1970, defendants received 184,935 shares of IGB stock in exchange for non-interest bearing, unsecured promissory notes in the amount of $369,870.00 due in 1973.

A voting trust agreement reflects that defendants controlled 1,336,391 voting shares of IGB and were at all material

---

1. In this opinion Robert R. Frank, Jack H. Stein, and John W. Roberts, Jr. will be referred to as "defendants" and J. William Wolf will be referred to as "plaintiff."

2. Although defendant Roberts was present when some of these representations were made, the District Court found that there was no credible evidence that he made any affirmative representations.

times in control of the company. Although IGB's Certificate of Incorporation requires the directors to fix the value of any property received by the corporation in exchange for stock, this was not done in conjunction with the transfer by defendants of their 19,826 shares of their NIB stock for 346,995 shares of IGB stock [hereinafter the "NIB–IGB stock exchange"]. In that exchange, a ratio of 17½ to 1 was the basis used, and the value of the IGB stock was calculated at its par of $1.00 per share. Under this ratio, defendants received the equivalent of $17.50 per share for their NIB stock. If the transaction had been based on payment of $2.00 per share for the IGB stock, the sum that defendants had represented would be paid and that everyone else did in fact pay, then defendants actually received what amounted to $35.00 per share for their NIB stock, which was worth no more than $10.00 per share. The required valuation was also neglected in connection with the issuance of stock to defendants in exchange for their promissory notes.

At a directors meeting held on January 16, 1970, defendants, acting as directors, elected three additional directors. The new directors, with defendants abstaining, authorized defendants to purchase the aforementioned 184,935 shares of IGB stock by executing non-interest bearing, unsecured notes in the total amount of $369,870. At the same time that these non-interest bearing and unsecured notes of defendants were outstanding, IGB borrowed greater sums from banks at interest rates varying from 7½ percent to 9½ percent per annum. Such loans were fully secured by part of the assets of IGB. The newly constituted board of directors, with defendants voting, "ratified" the NIB–IGB stock exchange and all other actions taken on previous occasions by defendants as directors. No annual or special meeting of stockholders of which plaintiffs received notice was held until January 21, 1971.

## II. ACTION BELOW

Soon after the meeting of January 21, 1971, plaintiffs brought this action both individually and derivatively as stockholders of IGB against defendants. The complaint charged that: (1) misrepresentations, omissions, and acts of defendants constituted a manipulative and deceptive device and contrivance and a scheme and artifice to defraud in connection with the sale of securities of IGB to plaintiffs, all of which was in violation of Rule 10b–5;[3] (2) sale by defendants to plaintiffs of the IGB stock constituted a violation of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, because no registration covering the securities had been declared effective by the United States Securities and Exchange Commission; (3) defendants committed common-law fraud in connection with plaintiffs' purchase of IGB stock.[4]

Relying on Rekant v. Desser, 5 Cir. 1970, 425 F.2d 872, the District Court found that plaintiffs had established a derivative Rule 10b–5 violation by defendants in that defendants' activities in the NIB–IGB stock exchange constituted a fraudulent issuance of stock to insiders for grossly inadequate consideration. The District Court found that the NIB stock was worth $198,260.00 and that therefore defendants paid approximately $.57 per share of IGB stock issued to them, or $1.43 less than the $2.00 per share that defendants represented that they would pay for their IGB purchase. The Court ordered defendants to reimburse IGB $1.43 per share of IGB received in the fraudulent transaction. The District Court also found, however, that plaintiffs were not entitled to indi-

3. Rule 10b–5 was adopted by the United States Securities and Exchange Commission pursuant to Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j.

4. It was stipulated that the activities complained of were accomplished by the use of means and instrumentalities of interstate commerce and the mails.

vidual relief under Rule 10b–5 because they failed to show any actual individual damages in connection with the sale or purchase of IGB stock, since through their own sales of IGB stock they had made a profit of approximately $20,000.-00 in addition to the value of the IGB shares they retained.

The District Court relied on Hill York Corp. v. American International Franchises, Inc., 5 Cir. 1971, 448 F.2d 680, in finding that defendants had violated Section 5 of the Securities Act of 1933 and in granting the individual plaintiffs the option of rescinding their purchase of 14,000 shares of IGB stock. The Court also held that Section 5 of the 1933 Act did not authorize derivative relief for the corporate entity.

Finally, the District Court found that defendants breached their fiduciary duty on January 16, 1970 by paying for IGB stock with non-interest bearing notes. The Court ordered defendants to pay IGB 7½ percent back-interest on the $369,870.00 note, from January 16, 1970 to the date of the judgment.

The District Court, however, refused to find that plaintiffs were entitled to be reimbursed for the costs of maintaining a derivative action for IGB. The Court also refused to appoint a receiver or to grant other equitable relief sought by plaintiffs.

On cross-appeal, defendants contend that the District Court erred by: (A) failing to recognize plaintiffs' unclean hands and to take appropriate remedial actions against plaintiffs; (B) failing to rule that the derivative Rule 10b–5 claim was barred by the statute of limitations; (C) allowing plaintiffs to maintain a derivative action; (D) failing to give proper weight to defendants' evidence concerning the value of the NIB stock exchanged for IGB stock; and (E) substituting its business judgment for that of the IGB stockholders and directors who ratified defendants' activities.

Plaintiffs contend on direct appeal that the District Court erred by: (A) refusing to grant plaintiffs individual relief pursuant to Rule 10b–5; (B) not granting interest to IGB on the judgment recovered from defendants; (C) dismissing plaintiffs' derivative Section 5 claim; (D) failing to grant further equitable relief to correct defendants' wrongdoing; and (E) denying plaintiffs' request for reimbursement for the costs of attorneys' fees and expert witness fees incurred in maintaining the derivative claim.

## III. DEFENDANTS' APPEAL

The defendants' briefs and arguments are predicated upon facts and inferences and conclusions that the trial court neither found nor was compelled to find. In the welter of charges and counter charges the ensuing obfuscation can be visioned away by the application of a relatively few simple legal propositions, the most elementary principle being that appellate courts are governed by the "clearly erroneous" test of Rule 52(a) of the Federal Rules of Civil Procedure when they review District Court fact findings. In applying this test, we have said:

> "The question is not simply whether the reviewing court would have found otherwise but whether the trial court could permissibly find as it did. The reviewing court should upset a finding only when it 'is convinced on the whole record that the finding does not reflect the truth and right of the case.' Wright, Federal Courts § 96, at 432."

Movible Offshore, Inc. M/V Wilken A. Falgout, 5 Cir. 1973, 471 F.2d 268, 271. Defendants' brief oftentimes totally fails to evidence an awareness, much less an understanding, of this controlling principle of appellate jurisprudence.

### A. Equitable Defenses

Defendants contend that the facts clearly establish that plaintiffs were manipulating market-makers who violated applicable statutes and Securities and Exchange Commission rules by selling

IGB stock before actually acquiring it. Claiming that this factual contention gives rise to a defense of "unclean hands." defendants urge that the District Court erred by: (1) finding that defendants violated Section 5 of the Securities Act of 1933 [5] and thereupon granting plaintiffs an option to rescind [6] pursuant to the remedial provisions of Section 12 of the Securities Act of 1933; [7] (2) not creating a constructive trust on behalf of the parties who purchased IGB stock from plaintiffs; and (3) not requiring plaintiffs to rescind their purchase of IGB stock.

■ Without passing on the merits of defendants' factual contentions, we deem it sufficient to say that defendants' arguments are misguided. While the defense of "unclean hands" is available in securities actions in this Circuit, Kuehnert v. Texstar Corp., 5 Cir. 1969, 412 F.2d 700, its application rests within the sound discretion of the District Court. Whether the defense is allowed should be determined by ascertaining whether the application or non-application of the defense will better promote the objectives of the securities laws by increasing the protection afforded the investing public. *Id.* The District Court did not abuse its discretion in refusing to bar plaintiffs from maintaining a suit to enforce the requirements of Section 5 of the Securities Act of 1933.

■ After carefully considering the record, we have determined that no party in the Court below ever took the position, by pleadings or otherwise, that a constructive thrust should be imposed in favor of those who purchased from plaintiffs. Without deciding the question of defendants' standing to seek such relief in the District Court, we conclude

5. Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e provides:
"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—
(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or
(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.
"(b) It shall be unlawful for any person, directly or indirectly—
(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to carry or transmit any prospectus relating to any security with respect to which a registration statement has been filed under this subchapter, unless such prospectus meets the requirements of section 77j of this title; or
(2) to carry or cause to be carried through the mails or in interstate commerce any such security for the purpose of sale or for delivery after sale, unless accompanied or preceded by a prospectus that meets the requirements of subsection (a) of section 77j of this title.

"(c) It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title."

6. Plaintiffs elected not to rescind their purchase of the remaining shares of IGB stock.

7. Section 12 of the Securities Act of 1933, 15 U.S.C. § 77l, provides in relevant part:
"Any person who—(1) offers or sells a security in violation of section 77e of this title [§ 5] . . . shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."

that because defendants did not in fact seek such relief below they cannot now raise a new theory that was not presented to the District Court. Hill York Corp. v. American Internat'l Franchises, Inc., 5 Cir. 1971, 448 F.2d 680, 690; Overmyer Co. v. Loflin, 5 Cir. 1971, 440 F.2d 1213, cert. denied, 1971, 404 U.S. 851, 92 S.Ct. 87, 30 L.Ed.2d 90.

■ Finally, we find that the District Court properly declined to find that plaintiffs were required to accept the remedy of rescission afforded with regard to their remaining shares. Plaintiffs invoked the jurisdiction of the federal court both under Section 5 of the Securities Act of 1933 and under Rule 10b–5, and were not required to elect the remedy of rescission proffered in settlement by defendants prior to trial, since that election would have been inconsistent with plaintiffs' capacity to maintain their derivative Rule 10b–5 complaint. United States v. Borin, 5 Cir. 1954, 209 F.2d 145, cert. denied, 1954, 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed. 647; Breeding v. Massey, 8 Cir. 1967, 378 F.2d 171.

### B. Statute of Limitations

■ Defendants argue that the District Court erred in not ruling that plaintiffs' individual and derivative Rule 10b–5 claims were barred by the statute of limitations. In actions for relief brought pursuant to Rule 10b–5 the applicable statute of limitations is that of the state in which the federal court sits. Hooper v. Mountain State Securities Corp., 5 Cir. 1960, 282 F.2d 195, cert. denied, 1961, 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693. Defendants nevertheless contend that even though plaintiffs filed this action within the two-year Florida statute of limitations, which defendants argue is applicable under F.S.A. § 517.-21, plaintiffs are barred because they failed to tender their securities to defendants as required by F.S.A. § 517.21. Plaintiffs reply that Florida's three-year statute of limitations for actions brought for relief on the ground of fraud, F.S.A. § 95.11, is applicable and that they fall well within that time period.

Defendants' argument misconceives the issue. This suit was maintained in the District Court under Rule 10b–5, not under pendent jurisdiction of a state claim. When applying the forum's statute of limitations to actions brought under the federal securities laws, federal courts borrow only the chronometric aspects and not the procedural or substantive nuances of the law of the forum. We therefore find it unnecessary to determine whether the applicable statute of limitations is the two-year limitation embodied in Section 517.21 or the three-year limitation of Section 95.11 because plaintiffs commenced this action well within either period of limitation.

### C. Plaintiffs' Standing to Maintain the Derivative Claim

Defendants next maintain that the District Court erred in allowing plaintiffs to maintain the derivative Rule 10b–5 claim on behalf of IGB because at no time material to the occurrences complained of were plaintiffs stockholders of IGB entitled to maintain a derivative stockholders' suit. See Fed.R.Civ.P. 23.-1.[8] Defendants contention, supported

---

8. Rule 23.1 provides:
 "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which he complains or that his share or membership thereafter devolved on him by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the

more by invective and vituperation than by scholarly analysis or citation of authority, is apparently based on a belief that: (1) plaintiffs' allegedly unclean hands bar them from maintaining a derivative suit; or (2) the fact that plaintiffs made a profit in excess of their original investment divests them of stockholder status, even though plaintiffs at all relevant times retained approximately 14,000 shares of IGB stock; or (3) the District Court was "clearly erroneous" in finding that plaintiffs at all times retained 14,000 shares of IGB.

■ We hold that the District Court did not err in allowing plaintiffs to maintain the derivative Rule 10b–5 claim. Defendants are purblind to the fact that this is not a case of a brigand seeking to recover his loot. Plaintiffs' actions, alleged to be illegal, were in no way involved with the transactions for which the District Court granted derivative relief. Furthermore, although defendants contend that plaintiffs are economic pirates disqualified because of their piracy from representing an innocent corporation, the District Court made no such finding and in fact found that only defendants were picaroons. Whether plaintiffs were or were not knights in shining armor is irrelevant under Rule 23.1 of the Federal Rules of Civil Procedure, so long as they fairly and adequately represented the shareholders in enforcing the rights of IGB. Assuming, without deciding, that unclean hands might bar plaintiffs from maintaining a derivative Rule 10b–5 claim, we find that the District Court exercised its discretion properly when it refused to find plaintiffs barred under the doctrine.[9]

■ We next find that the fact that plaintiffs made a profit on their original investment in no way alters their status as stockholders or their standing to bring a derivative claim. That plaintiffs' stock represented a profit to them does not alter its status as stock for the purposes of Rule 23.1 of the Federal Rules of Civil Procedure. As long as plaintiffs actually owned stock at the time of the challenged actions, then plaintiffs have standing to maintain a non-collusive Rule 10b–5 claim under the provisions of Rule 23.1.

Finally, we hold that the District Court's finding that plaintiffs resold all but 14,000 of their shares of IGB was not clearly erroneous. Neither by selectively reading the record, nor by isolating words and phrases, can defendants establish that plaintiffs were not shareholders at the critical and crucial times. The transcript and record, when fairly and comprehensively examined in their entirety, amply support the District Court's finding that plaintiffs were stockholders at the time of the occurrences they attack.

### D. Valuation of the NIB Stock

■ Defendants assert that the District Court erred in valuing the 19,826 shares of NIB stock that they exchanged for 346,995 shares of IGB stock in the NIB–IGB stock exchange. More specifically, defendants insist that the Court did not give proper weight to general trade practices concerning controlling stock and to other evidence in support of defendants' belief that the exchange rate was not detrimental or unfavorably harmful to IGB. We cannot agree. The District Court, the finder of fact, held: "Under any measure of value, the NIB stock was greatly overvalued in the exchange." We have considered the record before us, and under the limited factual

---

action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs."

9. See Section A, *supra.*

review open to us, *see* Fed.R.Civ.P. 52(a); Movible Offshore, Inc. v. M/V Wilken A. Falgout, 5 Cir. 1973, 471 F.2d 268, 271, we are unable to say that the District Court's valuation of NIB stock was clearly erroneous.

### E. Stockholder and Director "Ratification"

 Defendants contend that the District Court wrongfully substituted its business judgment for that of the Board of Directors of IGB. Defendants urge that this is especially so in light of the fact that the IGB stockholders allegedly ratified the corporate directors' actions. The problem with this contention is that defendants have failed to adduce adequate evidence that in any way shows that the stockholders of IGB made a knowing ratification of either the NIB–IGB stock exchange or of the sale of IGB stock for unsecured, noninterest bearing notes.[10] We therefore refuse to hold that the stockholders of IGB ratified the activities found by the District Court to be fraudulent.

 The only action that we have discovered in the record that arguably constitutes a ratification of defendants' action is that taken by the newly constituted Board of Directors on January 16, 1970. At that time, the defendants themselves elected three new members to the IGB Board, and the newly constituted Board, with all three defendants participating, then held two different votes to ratify defendants' past actions as directors. The newly elected directors, with defendants abstaining, also voted to sell defendants additional IGB stock for unsecured, non-interest bearing notes. We are mindful of the Florida rule that "[i]t cannot be disputed that a board of directors of a corporation is without power to ratify that which it cannot do directly or that which it could not authorize to be done initially. It has no power to ratify a

void or illegal act." Flight Equipment & Engineering Corp. v. Shelton, 103 So. 2d 615, 621 (citations omitted) (1958). We also recognize the general rule that "[r]atification can never be made on the part of the corporation by the same persons who wrongfully assume the power to make the contract." Fletcher Cyc. Corp. § 761, p. 1067. Guided by the rule of Flight Equipment & Engineering Corp. v. Shelton, *supra,* we hold that the votes of the newly elected directors could not legally authorize defendants to breach their fiduciary duties by accepting IGB stock for unsecured, non-interest bearing notes at the same time that IGB was borrowing money at interest rates varying from 7½ percent to 9½ percent per annum. Moreover, the votes of the newly constituted Board of Directors, in which defendants participated, could not constitute a valid ratification of defendants' illegal activities.

 We find that the fact that the fraud was committed by a director of IGB in no way provides these defendants with an impenetrable "business judgment" shield. *See* Bankers L. & C. Co., 1971, 404 U.S. 6, 10, 92 S.Ct. 165, 30 L.Ed.2d 128, 133. There could "be no more effective way to emasculate the policies of the federal securities laws then to deny relief solely because a fraud was committed by a director rather than by an outsider." Ruckle v. Roto American Corp., 5 Cir. 1964, 339 F.2d 24, ·29. As the District Court, held, and as this Court stated in Rekant v. Desser, *supra,* 425 F.2d at 882:

> "[W]hen officers and directors have defrauded a corporation by causing it to issue securities for grossly inadequate consideration to themselves or others in league with them or the one controlling them, the corporation has a federal cause of action under § 10b and Rule 10b–5. . . ."

Defendants' arguments to the contrary are meritless.

---

10. We have carefully examined the documents cited by defendants as supporting this argument. We find no support in them for the notion that the IGB stockholders ratified either of the transactions in question.

## IV. PLAINTIFFS' APPEAL

### A. *Plaintiffs' Individual Rule 10b–5 Claim*

The District Court dismissed plaintiffs' individual Rule 10b–5 claim because plaintiffs were unable to show any actual damages inasmuch as the dilution of their equity interest was not a cognizable element of damages for a violation of Rule 10b–5. Plaintiffs argue that Swanson v. American Consumer Industries, Inc., 7 Cir. 1969, 415 F.2d 1326, and Boggess v. Hogan, N.D.Ill. 1971, 328 F.Supp. 1048, establish that the dilution of a shareholder's equity interest is a cognizable element of damages for violation of Rule 10b–5 and that their equity interest was in fact diluted by (1) the NIB–IGB stock exchange, and (2) defendants' misrepresentations and omissions, which greatly altered the composite picture of the corporation from that represented to plaintiffs at the time of their initial purchase of IGB stock.

In Swanson v. American Consumer Industries, Inc., *supra,* the Seventh Circuit held that the dilution of equity interest is an appropriate measure of damages where dilution was caused by fraud in connection with a purchase or sale in which *the claimants participated.* Boggess v. Hogan, *supra,* held that individual stockholders could maintain Rule 10b–5 claims when fraud in connection with a purchase or sale in which their corporation participated diluted the equity position of the corporation, and thus does support plaintiffs' argument. This Circuit, however, has already rejected the result reached there. In Herpich v. Wallace, 5 Cir. 1970, 430 F.2d 792, we refused to allow shareholders of a corporation to maintain an individual Rule 10b–5 claim arising out of a fraudulent purchase by their corporation. We held that: "we are of the opinion that only purchasers and sellers of securities involved in an alleged Rule 10b–5 violation—that is, securities in connection with which fraud has allegedly been committed—can show injury of the type the rule is meant to prevent." *Id.,* 430 F.2d at 806. In short, a reading of *Swanson* with *Herpich* establishes that plaintiffs do not have standing to seek individual damages for the dilution of equity interest caused by the NIB–IGB stock exchange because plaintiffs were neither purchasers nor sellers in connection with that transaction.

Plaintiffs also contend that their equity interest was diluted by defendants' failure to fulfill the promises that had induced plaintiffs to purchase IGB stock. The District Court held that because plaintiffs had already made a profit of approximately $20,000 on their IGB stock, they were unable to show any damages arising out of their purchase. Typically in Rule 10b–5 damage actions:

> "[d]efrauded buyers who have prevailed on the merits have . . . recovered their purchase price on a recission measure of damages, whether or not formally suing for recission. In an appropriate situation, e. g., if the scurities are not worthless, a buyer can keep them and recover damages for the difference between the price paid and the real value when bought. This is an out of pocket rule *not covering expected speculative profit.*"

2 A. Bromberg, Securities Law: Fraud, § 9.1, p. 226, at nn. 2–4 (emphasis added) (1971). We find that this is the appropriate measure of damages. Therefore, in light of the facts that: (1) the District Court award plaintiffs the option to rescind the purchase of their remaining shares of IGB; (2) plaintiffs have already made a $20,000 profit on their original purchase of IGB stock; and (3) Rule 10b–5 only provides for recovery of actual damages, 15 U.S.C. § 78bb, and not for loss of speculative profits, Schaefer v. First National Bank of Lincolnwood, N.D.Ill.1970, 326 F. Supp. 1186, 1193, appeal dismissed, 7 Cir. 1972, 465 F.2d 234; Ross v. Licht,

S.D.N.Y.1967, 263 F.Supp. 395, 410,[11] plaintiffs are unable to show that they suffered any damages compensable under Rule 10b–5.

### B. Prejudgment Interest

Plaintiffs' contend that the District Court erred in not granting interest on the moneys that the Court ordered defendants to reimburse to IGB in connection with the NIB–IGB stock exchange. Relying on Joseph E. Bennet Co. v. Trio Industries, Inc., 1 Cir. 1962, 306 F.2d 546, plaintiffs claim that the right to recover interest on a claim is a state question and that Florida law requires that IGB recover interest on the judgment entered in its favor.

Plaintiffs reliance on Joseph E. Bennet Co. v. Trio Industries, Inc., *supra,* is erroneous. *Bennet* was a diversity case where state substantive law clearly would be controlling, and it is thus of no weight in an action brought pursuant to the federal securities laws. In determining whether prejudgment interest is allowed on damages awarded pursuant to Rule 10b–5, federal law governs. Ross v. Licht, *supra,* 263 F.Supp. at 411. Rule 10b–5, like Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b), "being a federal right, its remedial aspects also are a matter of federal law." Gilson v. Chock Full O' Nuts Corp., 2 Cir. 1964, 331 F.2d 107, 109. Under federal law, whether prejudgment interest should be awarded on a damage recovery in a Rule 10b–5 action is a question of fairness resting within the District Court's sound discretion. Blau v. Lehman, 1962, 368 U.S. 403, 414, 82 S.Ct. 451, 7 L.Ed.2d 403, 411; Wessels v. Buhler, 9 Cir. 1971, 437 F.2d 279, 284; Norte & Co. v. Huffines, 2 Cir. 1969, 416 F.2d 1189, 1191, 1192,

cert. denied sub nom., Muscat v. Norte & Co., 1970, 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396. We perceive no abuse of discretion in the District Court's denying IGB prejudgment interest in the instant case.

### C. The Derivative § 5 Claim

The District Court awarded defendants summary judgment on plaintiffs' derivative claim seeking damages for violations of Section 5 of the Securities Act of 1933, which was brought pursuant to the remedial provisions of Section 12 of that Act. The Court below reasoned that "Section 12 affords a remedy to the purchaser alone where there has been noncompliance with Section 5. It is not argued that the Section 5 violation here resulted in injury to the issuer." Plaintiffs contend that this ruling was erroneous because defendants had not carried their burden of proof on a motion for summary judgment. This argument misses the point. Section 12, in terms,[12] provides a remedy for violations of Section 5 only to purchasers of securities, Schoenbaum v. Firstbrook, S. D.N.Y.1967, 268 F.Supp. 385, 396, aff'd, 2 Cir. 1968, 405 F.2d 200, rev'd en banc on other grounds, 2 Cir. 1968, 405 F.2d 215, cert. denied, 1969, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219, or to one who stands in the shoes of a purchaser. American Bank & T. Co. v. Barad Shaff Securities Corp., S.D.N.Y.1972, 335 F. Supp. 1276. Plaintiffs' derivative Section 5 claim does not involve any purchase of securities by IGB and therefore was properly dismissed.

### D. Equitable Relief

Plaintiffs next argue that the District Court erred in failing to enjoin defendants from voting their shares of

---

11. Although Southern Ice Co. v. Morris, 5 Cir. 1915, 219 F. 551, has been cited by the Seventh Circuit in Estate Counselling Service v. Merrill, Lynch, Pierce, Fenner & Smith, Inc., 7 Cir. 1962, 303 F.2d 527, 533, as holding that speculative profits are recoverable in Rule 10b–5 actions, we

think that *Southern Ice Co.,* which was decided prior to the passage of both the Securities Act of 1933 and the Securities Exchange Act of 1934, is not controlling authority for that position.

12. *See* note 6 *supra.*

IGB until the shares were fully paid for. In determining whether further equitable relief was necessary, the District Court exercised its discretion to fashion a remedy that would most fully comport with the purposes of the applicable federal securities law. We cannot say that the District Court abused its equitable discretion by refusing to order additional injunctive relief.

### E. Costs of the Derivative Suit

■ Finally, plaintiffs urge that the District Court erred in holding that plaintiffs had failed to establish a basis for reimbursement of their reasonable attorneys' fees and expert witness fees incurred in maintaining this action. In Mills v. Electric Auto-Lite Co., 1970, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593,[13] the Supreme Court held that attorneys' fees could be awarded in private suits brought to enforce the Securities Exchange Act of 1934. The Court held that "petitioners, who have established a violation of the securities laws by their corporation and its officials, should be reimbursed by the corporation or its survivors for the costs of establishing the violation." Id., 396 U.S. at 389, 390, 90 S.Ct. at 624, 24 L.Ed.2d at 605.

We hold that the District Court erred in finding that plaintiffs had established no basis for reimbursement of the cost of maintaining the derivative claim. By their efforts in acting as "private attorney generals," plaintiffs established violations of the securities laws and created a substantial fund for the benefit of IGB. The reimbursing of plaintiffs' costs for attorneys' fees and expert witness fees is supported both by the policy of encouraging enforcement of the securities laws and by well established equitable principles. "[P]rivate stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means of enforcement of the . . . statute. Id., 396 U.S. at 396, 90 S.Ct. at 628, 24 L.Ed.2d at 609 (footnotes omitted). Moreover, in the instant suit plaintiffs have created a substantial fund benefitting IGB, and plaintiffs are equitably entitled to be reimbursed by IGB. Sprague v. Ticonic Nat'l Bank, 1939, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Central R. R. & Banking Co. v. Pettus, 1885, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915, Trustees v. Greenough, 1882, 105 U.S. 527, 26 L.Ed. 1157. On remand, the District Court should determine the amount of attorneys' fees and expert witness fees reasonably incurred by plaintiffs in maintaining the derivative claims on behalf of IGB, and the Court should order IGB to reimburse plaintiffs in that amount.

## V. CONCLUSION

Both in the District Court and in this Court, plaintiffs have vindicated the rights of IGB by enforcing the federal securities laws. Both the policy of the federal securities laws and notions of fair play require that plaintiffs be reimbursed for the costs of maintaining IGB's derivative claim. The District Court conducted the trial below in an admirable manner and we have been greatly benefitted by its thoughtful and incisive rulings. We affirm it in all things but the denial of plaintiffs' attorneys' fees and expert witness fees. Costs to be taxed against defendants-appellees-cross appellants.

Affirmed in part, reversed in part, and remanded with instructions.

13. For a valuable discussion of the ramifications of Mills v. Electric Auto-Lite Co., see Comment, The Allocation of Attorney's Fees After Mills v. Electric Auto-Lite Co., 38 U.Chi.L.Rev. 316 (1971). See also Comment, Attorneys' Fees in Shareholder Derivative Suits: The Substantial Benefit Rule Reexamined, 60 Calif.L.Rev. 164 (1972); Note, Mills v. Electric Auto-Lite Company; Proxy Violations—The Causation Question and the Award of Attorney's Fees, 65 Nw.U.L. Rev. 854 (1970).