EDWARD H. O'HARA, Respondent, *v.* JOHN N. DERSCHUG, Appellant.

Fourth Department, May 16, 1934.

*S. F. Hancock* [*Benjamin E. Shove* with him on the brief], for the appellant.

*Edward Schoeneck*, for the respondent.

CROSBY, J.   Plaintiff has recovered a judgment against defendant for $106,619.22 and costs for an alleged fraud, in the nature of deceit.   Plaintiff's complaint, and his bills of particulars, allege that on or about July 1, 1925, defendant, who was president of, and a stockholder in, the Syracuse Washing Machine Company, falsely represented to plaintiff that the " actual and true " value of the class B common stock of said company " was greatly in excess of its then market value," and that he could not make a better investment.   Plaintiff further alleges that, believing, relying, and acting upon such statement, and some other statements of less importance, he made purchases of said stock, sixteen in all, during a period of about two years, all to his great damage.   He made his first purchase on July 1, 1925, at $65 per share, and his last on June 6, 1927, at $30 per share, and for the intermediate purchases he paid prices ranging from $67 to $103 per share.   His total purchases amounted to 2,800 shares of stock, the aggregate purchase price being $183,228.

Had plaintiff proved what he pleaded, namely, that defendant represented to him what the " true and actual value " of the stock was, it is doubtful that he would be entitled to recover any damage. For defendant's statement that certain stock had a " true and actual value " of so much is mere " sales talk," an expression of opinion of what the stock was worth, which cannot be made the basis of an action in deceit.   (*Ellis* v. *Andrews*, 56 N. Y. 83; *Sparman* v. *Keim*, 83 id. 245; *Chrysler* v. *Canaday*, 90 id. 272.)

And without plaintiff's testimony that he informed defendant of his intention to buy the stock as a permanent investment for his old age, there would be no basis for damages, for the weight of evidence, in this case, shows that there was a free and open market for the stock in question throughout all the period during which plaintiff was purchasing and, to some extent, selling the stock.   At the various times when plaintiff bought stock he could have sold at the same price.   There were, indeed, times when plaintiff could have sold his purchases of stock at great profit.   By the weight of

evidence there was a well-established, very active, free and open market for this stock in and about Syracuse during the whole period with which we are concerned. This being so, and the rule of damage being, ordinarily, the difference between what plaintiff paid for the stock and what it was worth at the time, plaintiff would have suffered no recoverable damage. (*Reno* v. *Bull*, 226 N. Y. 552.)

But, on the trial, plaintiff testified to two things not hinted at in his pleading, and one of which was materially at variance with his pleading:

(1) While, in his pleading, plaintiff alleged that he relied upon defendant's representation that the " true and actual " value of the stock was in excess of the then selling price on the market, on the trial he testified that the representation was that the " book value " was in excess of its selling price. Plaintiff contended on the trial that the two terms were identical in meaning, and the learned trial court, in effect, adopted that theory. This is obviously erroneous. " Book value " is a matter of exact mathematical computation, as the books are set up, and a statement of what was " book value " would be a statement of a present fact of which defendant, situated as he was, might be presumed to have exact knowledge. A statement of what was " true and actual value " is merely an expression of opinion as to what the stock was really worth depending upon many considerations besides the set-up of the books.

Objection to proof of defendant's statement of what was the " book value " was duly taken on the ground that it was at variance with the pleading, and exception was duly taken.

(2) Upon the trial plaintiff testified that he informed defendant, in substance, that, if he purchased any of the stock in question, it would be for the purposes of an investment for his old age, that is, a permanent investment. As a matter of strict pleading, it was probably not incumbent upon plaintiff to inform defendant that he was going to rely upon the claim that he informed defendant that he was buying the stock for a permanent investment, but this claim, advanced for the first time at the trial, was the only means by which plaintiff escaped the operation of the rule laid down in the case of *Reno* v. *Bull* (*supra*), and secured for himself the benefit of the rule laid down in *Hotaling* v. *Leach & Co.* (247 N. Y. 84).

While we do not think it was error to permit plaintiff to prove that he gave the defendant to understand that he was buying for a permanent investment, we think it reversible error to have permitted plaintiff to prove a misrepresentation as to " book value "

under the allegation that there was a misrepresentation as to " true and actual value."

Another serious error is disclosed by this record: In paragraph seventh of his complaint plaintiff alleged that " said representations were made by the defendant pursuant to a plan common to defendant and other persons associated with the defendant," etc. In his bill of particulars plaintiff says that the names of those involved with defendant in the " common plan " are unknown to him. Upon the trial letters written and statements made by various people, other than defendant, were proven, and claimed to be binding on defendant, as well as the acts of various people, and the acts of the corporation itself, although in the end not a particle of proof was forthcoming that defendant was linked with anybody in any " common plan " to defraud plaintiff. Furthermore, the court charged, at the request of defendant and without exception by plaintiff, that there was no evidence in the case to support plaintiff's allegation that there was any " common plan " between defendant and others to defraud plaintiff. Yet the record is filled with proof of acts and statements of others than defendant done and made throughout a period of several years before plaintiff and defendant ever had met, all claimed to be chargeable to defendant and some of which were extremely damaging to defendant in the sight of the jury.

Upon the trial plaintiff was permitted to show a detailed history of the corporation from its incorporation down to July 1, 1925, and later, a period of more than five years. The various reorganizations were gone into, the cash and stock dividends that defendant had drawn were proven and his large salary was exploited, all to no apparent purpose excepting to prejudice defendant, for plaintiff's counsel admitted on the trial that he did not claim that anything illegal had been done in the management of the company. To have admitted proof of all these irrelevant matters was highly prejudicial to defendant, and was error, which was not cured by striking out a large portion of the evidence.

Defendant was also prejudiced by remarks made by plaintiff's counsel, during the trial, in the presence of the jury. A few of them should be mentioned: In his opening to the jury, counsel stated that similar actions are pending against defendant, one of which was brought by a judge (naming him), who, at the time of the trial, was holding a term of Supreme Court in an adjoining room. No exception was taken to this remark, but exceptions were taken to most of those that will now be mentioned.

At one point in the trial the certificate of incorporation of the washing machine company was offered in evidence by plaintiff.

Objection was made and a discussion occurred as to the admissibility of the document and the purpose for which it could be admitted. The court admitted the document as throwing some light on the "cash value of the stock at the different transfer dates." Plaintiff's counsel asked to have the ruling changed so as to have the document admitted in evidence as "showing the general treatment by this corporation of its stockholders, the motives, the greed, the rapaciousness and the skill of this group of bankers and syndicators." This occurred right along with proof of acts of dozens of persons, other than defendant, not one of whom was ever tied up with defendant in any "common plan" so far as the evidence shows.

At another point in the trial plaintiff offered in evidence a letter, written by another than defendant, several years before plaintiff and defendant even knew each other, and plaintiff's counsel stated that he offered it on the theory that it showed "that these bankers and brokers and their assistants in Syracuse were constructing a picture which enabled them to take [plaintiff's] money under false representation."

At another point plaintiff was seeking to prove a stock dividend paid by the corporation, some years before the date of the alleged deceit. Counsel stated the theory of the proof to be that it showed "that this group * * * voted these stock dividends and held it until they created a sentiment in Syracuse and then they all dumped their stock on the innocent people of the City of Syracuse." Language better calculated to inflame the minds of jurors drawn from Syracuse and vicinity could not easily be devised.

In view of the failure to show any "common plan" between defendant and others to defraud plaintiff the constant reference by counsel to "the rest of them on the inside," to "Mr. Derschug working in common with the other insiders," and other like remarks lead to the belief that a fair and impartial verdict in this case was an impossibility.

A further error was committed in not permitting defendant the fullest cross-examination of plaintiff to disprove his claim that all during a period of two years he bought block after block of the stock in question relying implicitly on a statement made to him by a mere casual acquaintance in a conversation had at a casual meeting on the public street. The only way to prove directly a man's state of mind is to let him swear to it. The only way to disprove it is by indirect methods. Defendant sought here to show that plaintiff was a large dealer and speculator in all sorts of stocks, that instead of buying for permanent investment, he both bought and sold of this same stock, and that he borrowed most of the money

with which he bought the various blocks of stock. Some of these things defendant was permitted to prove. But defendant was barred from many avenues of indirect attack which he was entitled to follow in cross-examining plaintiff. To be sure the cross-examination was tiresomely long as it was, but great indulgence should be allowed to save defendant being left helpless against testimony of plaintiff as to his state of mind, especially when it strains credulity to the uttermost to believe that plaintiff relied on this one remark of defendant, in the face of all the other information and means of information open to him — one might almost say thrust upon him.

The trial of this case consumed several weeks. In our opinion the trial was unreasonably prolonged. The issues of fact are simple but the greater part of the record is taken up with collateral and irrelevant matters. We think the case was over-tried by both sides.

We do not think that an error was committed by the trial court in refusing to require the jury to bring in separate verdicts covering each purchase of stock by plaintiff. Yet, upon another trial, it would perhaps be well to require special findings relating to the several purchases. The reason is obvious. Plaintiff's Exhibit No. 308 was given to the jury. Upon that exhibit is listed the dates and amounts of plaintiff's various purchases of stock, the prices and amounts paid, the difference between amounts paid and book value, as to each purchase, the difference between amounts paid and the values based on a capitalization of the average earnings for five years, and some other data. Even though the court instructed the jury that plaintiff's loss on each separate purchase was subject for separate consideration, and that they were not bound to accept either one of plaintiff's theories of damage (i. e., [1] difference between purchase price and book value, or [2] difference between purchase price and value reckoned on capitalized earnings), and that they might adopt some other theory, still, in view of the general verdict we not only cannot tell what theory of damage was adopted, but we cannot tell how many of the purchases, or which ones, were considered, by the jury, a proper subject for the award of damage. It would be well to know whether the jury found that the plaintiff relied upon defendant's representation in making the first three or four purchases, or whether they found that he, in spite of all other knowledge that came to him, still relied on that representation after a period of nearly two years, for as to each purchase of stock plaintiff must have relied on defendant's representation in order to recover.

Another error, in our opinion, was committed on the trial. Plaintiff is the editor of an important newspaper published in Syracuse. It issues five editions a day. Shortly after plaintiff began to buy the stock in question there began to appear on the financial page of the paper articles about the Syracuse Washing Machine Company, its condition and management. Upon cross-examination plaintiff admitted reading all five editions of his paper each day quite carefully. Solely as bearing on plaintiff's knowledge of the condition and affairs of the company, and for the purpose of showing that he was not, as he claimed, relying entirely on defendant's representation made on July 1, 1925, defendant offered these articles in evidence. All, except two editorials which plaintiff admitted having read at the time they were published, were excluded solely on the theory that plaintiff would not say positively that he remembered having read them at the time they were published. There was easily sufficient proof to warrant a jury in finding that plaintiff read all these articles, and so far as any of them, if read, could be said to give plaintiff any light on the matter as to which he claims to have relied solely on defendant's representations, they should have been admitted.

If the plaintiff shall recover in this case, the question of the measure of damages will become an important one. The most recent authority on the subject that has been called to our attention is the case of *Hotaling* v. *Leach & Co.* (247 N. Y. 84). It is there stated (at p. 92) that the difference between the purchase price of the security and its value at the time of the discovery of the fraud is not a rule that is accepted in this State. The correct rule is there stated to be the difference between the purchase price and the value of the security put to the use to which both parties understood it was to be put.

However, it must be true that in no case may the plaintiff recover more than the difference between what he paid for the stock and its value at the time of discovering the fraud. Otherwise, after discovering the fraud, he could continue the investment and charge all future losses, if any, to defendant, and keep for himself all future gains in case the stock should rise in value. One with full knowledge of the fraud should not be permitted to indulge in future speculation entirely at the risk of someone else. Indeed, the opinion in *Hotaling* v. *Leach & Co.* (*supra*), after stating the rule of damages, as hereinbefore noted, makes this observation: " As long as the fraud continued to operate and to induce the continued holding of the bond, all loss flowing naturally from that fraud may be regarded as its proximate result."

Therefore, it becomes important for the jury to determine not only what kind of an investment it was for which plaintiff was buying, as understood by both parties, taking into consideration the age of plaintiff and all other circumstances that can throw light upon the understanding of the parties, but also to determine when, in relation to each separate purchase, the fraud was discovered.

It is also to be remembered that in *Hotaling* v. *Leach & Co.* (*supra*) a purchase of bonds was involved, and in the instant case stocks were purchased. Bonds are promises to pay definite amounts at certain times. Stocks, on the other hand, evidence an interest in the business of the company issuing them. Though we cannot say, as a matter of law, that stocks may not be purchased for investment, it is important, on the factual side of the case, to inquire whether plaintiff was buying stocks for an investment for his old age.

For the reasons herein stated the judgment and orders should be reversed on the law and the facts, and a new trial ordered, with costs to the appellant to abide the event.

SEARS, P. J., TAYLOR, EDGCOMB and THOMPSON, JJ., concur.

Judgment and orders reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event.