**Myron HARRIS, Appellant,**

v.

**AMERICAN INVESTMENT COMPANY et al., Appellees.**

**No. 74–1573.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1975.

Decided June 18, 1975.

As Modified on Denial of Rehearings and Rehearings En Banc Aug. 11, 1975.

Certiorari Denied Jan. 12, 1976.

See 96 S.Ct. 784.

Hurd Baruch, Philadelphia, Pa., for appellant.

Robert S. Allen, St. Louis, Mo., for appellee, American Investment Company and others.

Robert F. Scoular, St. Louis, Mo., for appellee, Haskins & Sells.

Before MATTHES, Senior Circuit Judge, BRIGHT and STEPHENSON, Circuit Judges.

BRIGHT, Circuit Judge.

Myron Harris, who holds 1,000 shares of common stock of American Investment Company (AIC) which he purchased on August 4, 1969, through a public stock exchange, brings this action individually and on behalf of the class of all AIC shareholders similarly situated. He names as defendants AIC, certain of its officers and directors, and the accounting firm of Haskins & Sells, and he alleges the following wrongdoing:

a) Counts I and II (against all defendants): Immediately before and continuing after 1969 the defendants published false and misleading statements in violation of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1970), and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5 (1974), and filed false and misleading information with the Securities and Exchange Commission in violation of § 18(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78r(a) (1970).[1]

---

1. Harris alleges that these misrepresentations and omissions induced him and others to buy and retain AIC stock and caused an artificially inflated market value for the stock.

Section 10(b) of the Securities Exchange Act provides as follows:

Regulation of the use of manipulative and deceptive devices.—It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as neces-

b) Count III (against defendants other than AIC and Haskins & Sells): The individual defendants violated § 10(b) of the Securities Exchange Act, Rule 10b–5 and AIC's listing agreement with the New York Stock Exchange and committed fraud upon AIC shareholders by failing to inform AIC and its shareholders of merger proposals from other corporations.

c) Count IV (stockholder derivative action): The individual defendants mismanaged AIC.

On motion of the defendants, the district court granted summary judgment dismissing Harris' individual claim for damages under counts I and II. Then, because Harris no longer possessed a cause of action himself, the district court also dismissed the class action in these counts.

The district court also dismissed count III as an individual and class action for failure to state a claim, for Harris had failed to allege that he was a stockholder at the time of the incidents which formed the basis for the count.

The district court dismissed the derivative action, count IV, for failure to state

a claim for which relief can be granted because it concluded that Harris had failed, as he had in count III, to allege that he was a stockholder at the time of the incidents complained of. The court's dismissal of counts III and IV was without prejudice.[2]

Harris appeals, contending that the trial court erred in granting summary judgment on his individual claims in counts I and II; in dismissing the class allegations in those counts; and in dismissing the derivative action alleged in count IV. He raises no question on appeal with respect to the dismissal of count III. We find it necessary to resolve the merits only with respect to Harris' individual claims in counts I and II. We reverse and remand the cause for further proceedings in the district court.

Since this case comes before us after summary disposition, the record is skeletal at best, limited to the facts alleged in the pleadings and the facts appearing in defendants' affidavit in support of their motion for summary judgment. Nonetheless, we are able to reconstruct a fac-

sary or appropriate in the public interest or for the protection of investors. [15 U.S.C. § 78j(b) (1970).] .

Rule 10b–5 provides as follows:
Employment of manipulative and deceptive devices.
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
in connection with the purchase or sale of any security. [17 C.F.R. § 240.10b–5 (1974).]
Section 18(a) of the Securities Exchange Act provides as follows:

Liability for misleading statements.—(a) Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this title or any rule or regulation thereunder, or any undertaking contained in a registration statement as provided in subsection (d) of [this] section 15 of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading. A person seeking to enforce such liability may sue at law or in equity in any court of competent jurisdiction. * * [15 U.S.C. § 78r(a) (1970).]

2. The district court opinion is reported at 378 F.Supp. 894 (E.D.Mo.1974).

tual background adequate for purposes of discussion.

AIC stock is publicly traded on the New York Stock Exchange. Harris purchased his shares on August 4, 1969, at a price of $18⅞. The market for this stock remained fairly constant for a time, but by June 30, 1970, the stock had plunged to $7½. It recovered somewhat thereafter, and by April 8, 1971, the day preceding the filing of the complaint, AIC shares were sold on the New York Stock Exchange at a high of $16⅝ and a low of $16⅛.

Harris contends that in the fall of 1970 he came to believe that he had been the victim of an on-going scheme of misrepresentation and fraudulent concealment of information. At that time the market price of AIC stock had fallen to approximately $9 per share. He contends that he approached his attorneys at that time to discuss possible federal securities law violations. The attorneys prepared a complaint in the winter of 1970 and, as we have noted, filed it in early April of 1971.

## I. Damages.

The dispute in this case focuses upon whether the appellant individually sustained any recoverable damages from the defendants' alleged violations of §§ 10(b) and 18(a) of the Securities Exchange Act. In granting summary judgment, the district court ruled that Harris had suffered no damages. The court reasoned as follows:

The defendants' contention is that the undisputed facts in this case disclose that plaintiff has not suffered any damages as a result of any alleged wrongdoing of the defendants because subsequent to plaintiff's purchase of his AIC common stock and subsequent to the filing of this lawsuit, plaintiff could have recouped his investment or

sold at a profit on the open market: therefore, entitling defendants to summary judgment in their favor on Counts I and II. With this contention the Court agrees. [378 F.Supp. at 900.]

The district court noted that following Harris' purchase of the stock its price exceeded $18⅞—his purchase price—for 47 days through May 31, 1971. Included in this period were 18 days out of the 30 days immediately subsequent to the commencement of this action. However, the record shows that between the fall of 1970, when plaintiff asserts that he first suspected fraud, and the filing of the lawsuit, the stock at no time equaled or exceeded the purchase price.

The validity of the district court's holding rests upon its legal determination that the defendants may be absolved from liability by showing that the plaintiff could have recouped his loss by selling his stock subsequent to his discovery of their alleged fraud, including sale after the institution of the lawsuit. We disagree with this determination. We hold that on the record presented in this case it cannot be concluded, for purposes of summary judgment, that plaintiff has suffered no damages.

### A. Possible Dates for fixing damages.

■ Although the federal securities laws in several instances offer greater protection to buyers and sellers of securities than do common law fraud concepts, see 3 L. Loss, *Securities Regulation* 1435–36 (2d ed. 1961), common law fraud concepts underlie the securities laws and provide guidance as to their reach and application, particularly where, as here, Congress has not specified the remedies available to a defrauded buyer.[3]

■ In cases arising under § 10(b) and Rule 10b–5 the federal courts employ an

---

**3.** Although Congress in § 18(a) has expressly authorized recovery of damages resulting from false or misleading statements in filed documents, it did not specify how and when the damages are to be measured. *Compare* § 11(e) of the Securities Act of 1933, 15 U.S.C. § 77k(e) (1970) (civil liabilities on account of

false registration statement). Thus, to the extent that § 18(a) is silent with respect to the measurement of damages we view it in the same light as we view § 10(b), which is silent with respect to remedies altogether. Unless otherwise indicated, our discussion therefore applies equally to §§ 10(b) and 18(a).

out-of-pocket rule of damages borrowed from the tort action of deceit.[4]. *See Madigan, Inc. v. Goodman,* 498 F.2d 233, 239 (7th Cir. 1974); *Wolf v. Frank,* 477 F.2d 467, 478–79 (5th Cir.), *cert. denied,* 414 U.S. 975, 94 S.Ct. 287, 38 L.Ed.2d 218 (1973); *Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 303 F.2d 527, 533 (10th Cir. 1962); *see generally* 6 L. Loss, *Securities Regulation* 3922–23 (Supp.1969); Note, *Measure of Damages in Rule 10b–5 Cases Involving Actively Traded Securities,* 26 Stan.L.Rev. 371, 383–85 (1974). *But see Ohio Drill & Tool Co. v. Johnson,* 498 F.2d 186, 190–91 (6th Cir. 1974) (proper measure of damages is disgorgement of profits by defrauding seller); *Zeller v. Bogue Electric Manufacturing Corp.,* 476 F.2d 795, 801–03 (2d Cir.), *cert. denied,* 414 U.S. 908, 94 S.Ct. 217, 38 L.Ed.2d 146 (1973) (same).

The *Restatement of Torts* (1938), at § 549, measures damages under this rule as

> (a) the difference between the value of the thing bought, sold or exchanged and its purchase price or the value of the thing exchanged for it * * *.

Thus, actual pecuniary loss rather than loss of bargain is the measure of damages:

> Under the [out-of-pocket] rule stated in * * * Clause [(a)] the recipient of a fraudulent misrepresentation is entitled to recover from its maker only the actual loss which because of its falsity he sustains by his action or inaction in reliance upon it. If notwithstanding the falsity of the representation the thing which a vendee acquires is of equal or greater value than the price paid and he has suffered no harm through using it in reliance upon

its being as represented, he has suffered no loss and can recover nothing. [*Restatement of Torts* § 549, comment b at 110.]

The federal courts have identified two dates at which damages under the out-of-pocket rule may be ascertained. Quoting from *Sigafus v. Porter,* 179 U.S. 116, 125, 21 S.Ct. 34, 45 L.Ed. 113 (1900), Judge Aldrich of the First Circuit has suggested that damages for a defrauded purchaser of securities coming within the coverage of § 10(b) and Rule 10b–5 should be fixed as of the date of purchase:

> [T]he damages are to be reckoned solely by "the difference between the real value of the property at the date of its sale to the plaintiffs and the price paid for it, with interest from that date, and, in addition, such outlays as were legitimately attributable to the defendant's conduct, but not damages covering 'the expected fruits of an unrealized speculation' [*Smith v. Bolles,* 132 U.S. 125, 130, 10 S.Ct. 39, 33 L.Ed. 279 (1889)]." [*Janigan v. Taylor,* 344 F.2d 781, 786 (1st Cir.), *cert. denied,* 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965).]

*Accord, Occidental Life Insurance Co. v. Pat Ryan & Associates,* 496 F.2d 1255, 1264–65 (4th Cir.) (*semble*), *cert. denied,* 419 U.S. 1023, 95 S.Ct. 499, 42 L.Ed.2d 297 (1974); *Wolf v. Frank, supra,* 477 F.2d at 478–79; *Estate Counseling Service, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 303 F.2d at 533 (dictum); *Gottlieb v. Sandia American Corp.,* 304 F.Supp. 980, 991 (E.D.Pa. 1969), *aff'd in part, rev'd in part on other grounds,* 452 F.2d 510 (3d Cir.), *cert. denied,* 404 U.S. 938, 92 S.Ct. 274, 30 L.Ed.2d 250 (1971). The typical fact sit-

---

4. One commentator has described this rule in the following terms:

> [The out-of-pocket rule] allows recovery of the difference between the actual value of what the injured party gave and what he received. In contrast with restitution damages, the plaintiff recovers what he has lost, rather than what the defendant has gained.

> The injured investor is given nothing for the loss of the benefit that he would have enjoyed had defendant's representations been true. [Note, *Measurement of Damages in Private Actions under Rule 10b–5,* 1968 Wash.U.L.Q. 165, 172.]

*See also* W. Prosser, *Law of Torts* § 110 at 733–34 (4th ed. 1971).

uation in these cases discloses an alleged fraudulent concealment or misrepresentation by a seller directed at the buyer-plaintiff only and not the public at large. Hence, the actual worth of the securities at the time of purchase by the plaintiff is readily ascertainable. *But see Gottlieb v. Sandia American Corp., supra,* 304 F.Supp. at 989–90.

The *Restatement of Torts* observes that there may be difficulty ascertaining the value of the article transferred in connection with a misrepresentation where the misrepresentation affects the market price of the article. This is particularly true with respect to publicly-traded securities:

> The value of the article is normally determined by the price at which it could be resold in an open market or by private sale if its quality or other characteristics which affect its value were known. However, the price which determines the value of the article is not necessarily the price which it would bring at the time the sale is made. In many cases this price is due to the widespread belief of other buyers in misrepresentations similar to that made to the person seeking recovery, as where the market price of securities, such as bonds or shares, is the result of widely spread misrepresentations of those who issue or market them. The fact that the market price is inflated or depressed by such misrepresentations is the important factor which makes the price fictitious * *.
> [*Restatement of Torts* § 549, comment c at 111.]

Thus, where a defendant's fraudulent conduct is alleged, as it is in this case, to have caused an artificial market of long duration, damages have been fixed, consistently with the *Restatement's* position, not at the date of purchase but rather at the date of discovery of the fraud. *See Esplin v. Hirschi,* 402 F.2d 94, 104–05 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *see also Chasins v. Smith, Barney & Co.,* 306 F.Supp. 177, 178 (S.D.N.Y.1969) (failure by broker to disclose his position as a market-maker).

■ Although the Tenth Circuit has fixed damages as of the date that the buyer actually discovered, or should have discovered, the seller's fraud, *Richardson v. MacArthur,* 451 F.2d 35, 43–44 (10th Cir. 1971); *Esplin v. Hirschi, supra,* 402 F.2d at 104, we believe that under the allegations made in the instant case the public discovery of the fraud may be the proper date at which to ascertain damages. The circumstances may disclose that only then did the market reflect the true value of the stock, unaffected by what is alleged to have been the defendants' continuing fraud:

> [V]alue is determined by their [*i. e.,* the securities'] market price after the fraud is discovered when the price ceases to be fictitious and represents the consensus of buying and selling opinion of the value of the securities as they actually are.
>
> *       *       *       *       *       *
>
> In the majority of stock transactions the person seeking recovery discovers the falsity of the misrepresentations at the same time that it becomes known to the investing public and, therefore, at a time when the price of the stock is no longer inflated or depressed by the same or similar misrepresentations. It may be, however, that he discovers the falsity of the representations either earlier or later than the general public. In the first situation, his loss is determined by the actual value of the securities in question shown by their market price after the public discovery of the fraud brings the price into accord with the actual value. In the second situation, where the person seeking recovery does not learn of the falsity of the facts represented until sometime after the general public has discovered it, the value of the securities is fixed by the price at which they are selling at the time of his and not of the public's discovery. [*Restate-*

*ment of Torts* § 549, comment c at 111, 112–13.] [5]

The American Law Institute's *Federal Securities Code* draft adopts in principle this same reasoning:

The measure of damages * * * is

(A), if the plaintiff is a buyer, the difference between the amount that he paid and the value of the security determined as of the time specified in section 1402(e)(1) [*i. e.,* when, *inter alia,* all material facts became generally available to the investing public]. [ALI, *Federal Securities Code* § 1402(f)(1)(A) (Tent. Draft No. 2, 1973).]

This proposed codification incorporates the common law rule for the date of ascertaining damages. ALI, *Federal Securities Code* § 1402(f)(1), comments (1)(b), (4)(b), (5)(b). [6]

■ Thus, assuming, arguendo, the truth of Harris' claims that the actual value of the securities cannot be established at or near the date of purchase due to an artificially inflated market price of long duration attributable to defendants' fraudulent misrepresentations, Harris may be able at the trial to establish an alternate basis for recovery by introducing evidence of his damages as of the date of public discovery of the fraud.

If Harris cannot make out a case justifying this rule of damages, he may nevertheless by able to prove at trial that the actual value of the securities at the time of puchase was less than the market price that he paid for them.

The district court did not purport to rely on these damage rules in dismissing the action. We cannot say on the abbreviated record before us that plaintiff sustained no loss under either of these rules for ascertainment of damages. These matters will be before the district court upon the trial of this case. With this background, we turn to the issue of mitigation of damages, the basis on which the district court dismissed the case.

### B.  *Mitigation of damages.*

■ A defrauded buyer of securities may maintain an action for damages under § 10(b) and, presumably, § 18(a), even though he continues to hold the securities. *Pfeffer v. Cressaty,* 223 F.Supp. 756, 758 (S.D.N.Y.1963); *see Occidental Life Insurance Co. v. Pat Ryan & Associates, supra,* 496 F.2d at 1264–65; *Wolf v. Frank, supra,* 477 F.2d at 478; *Sackett v. Beaman,* 399 F.2d 884, 891 (9th Cir. 1968); *Johns Hopkins University v. Hutton,* 326 F.Supp. 250, 262 (D.Md.1971), *aff'd in part, rev'd in part on other grounds,* 488 F.2d 912 (4th Cir. 1973), *cert. denied,* 416 U.S. 916, 94 S.Ct. 1623, 40 L.Ed.2d 118 (1974). At common law, a defrauded purchaser of securities is under no duty to sell them prior to maintaining an action for deceit but may hold them for investment purposes if he chooses. *See Hindman v. First National Bank,* 112 F. 931, 935–36 (6th Cir.), *cert. denied,* 186 U.S. 483, 22 S.Ct. 943, 46 L.Ed. 1261 (1902); *Hotaling v. A. B. Leach & Co.,* 247 N.Y. 84, 159 N.E. 870, 872 (1928); *Stephens v. Wheeler,* 193 Wis. 164, 213 N.W. 464, 468 (1927). Thus, Harris was under no duty to sell his AIC stock, for mitigation of damages or any other purpose, prior to commencing this action.

---

**5.** The *Restatement (Second) of Torts* retains this formulation of the date for fixing damages. *Id.* § 549, comment c at 30–32 (Tent. Draft No. 11, 1965).

**6.** The appellees urge that *Morrow v. Schapiro,* 334 F.Supp. 399 (E.D.Mo.1971), calls for the conclusion that the plaintiff in this case has suffered no compensable injury. We do not read *Morrow* to reach the issue presented

here. In *Morrow,* the court assumed that the market value of the plaintiff's securities, which was greater than the purchase price, reflected—contrary to market value in the instant case—nothing other than the actual value of the securities and it reasoned that the plaintiff had therefore sustained no loss by misrepresentations that might have induced his purchase. *Id.* at 401.

Where one has bought securities for long-term investment, it would be inappropriate to apply a rule requiring him to sell them prematurely for the benefit of the defrauding defendant. As we have noted, Harris' damages may be measured as of the date of public discovery of the fraud. Under those circumstances,

[t]he plaintiff will not be able to avail himself of any further decrease in the value of the security after that date. So also the defendant should not be able to avail itself of any increase in the value of the stock after that date. This is the only method in which a consistent measure of damages can be obtained. [*Cant v. Becker & Co.,* 379 F.Supp. 972, 975 (N.D.Ill.1974).]

*Accord, O'Hara v. Derschug,* 241 App. Div. 513, 272 N.Y.S. 189, 198 (1934). *See also Beecher v. Able,* CCH Fed.Sec.L. Rep. (1974–75 Transfer Binder) ¶ 95,016 at 97,561 (S.D.N.Y.1975) (no need for plaintiff to mitigate damages in action under Section 11(a) of the Securities Act of 1933, 15 U.S.C. § 77k(a)(1970), by selling stock after statutory date for measurement of damages).

Consequently, we reject the appellees' contention that Harris was under a duty, after discovery of the fraud, to sell his AIC stock for the benefit of the appellees. By continuing to hold the stock after that date Harris has, in effect, made a second investment decision unrelated to his initial decision to purchase the stock. As the court observed in *Cant v. Becker & Co., supra,* 379 F.Supp. at 975, what happens after this second decision has no bearing whatsoever on the measure of plaintiff's damages.

II. *Other Issues.*

Harris requests that, if we should reverse the district court's ruling on damages, we should also certify counts I and II as a class action. He contends that he is entitled as a matter of law to bring this case as a class action. We decline the invitation to decide at this juncture of the case whether it should proceed as a class action.

■ The district court dismissed the class action with respect to counts I and II because it had determined that Harris could recover no damages on his individual claims under these counts and therefore could not adequately represent all defrauded purchasers of AIC stock. Until the district court can reconsider Harris' adequacy as a representative of a proper class, we deem it inappropriate to evaluate the propriety of a class action. Accordingly, the appeal on this issue is dismissed.

Harris also seeks our review of the district court's order dismissing without prejudice the allegations contained in count IV, a derivative action. As we have noted, this dismissal rested upon the failure of the appellant to plead specifically, as required by Fed.R.Civ.P. 23.-1(1), that he was a stockholder at the time of the commission of the alleged wrongs by the directors and officers of the corporation.

According to Harris' contention, he has discussed certain of the events referred to in count IV in detail in other counts of his complaint. He contends that by reference to these allegations in other counts, count IV should be construed as alleging that he held stock at the time that defendants were guilty of misconduct in managing AIC.

■ This contention was apparently not presented to the district court, for the court stated that "the failure of the plaintiff to set out the date of the alleged wrongdoing or that any of the alleged wrongdoings continued after he [Harris] acquired his stock on August 4, 1969, * * * [caused the court to assume that] plaintiff cannot allege facts to support Count IV." [378 F.Supp. at 899.] Since the trial court entered this dismissal of count IV without prejudice, Harris is free to present this contention to the district court on remand and to seek leave to amend count IV to show that acts of misconduct by the directors and officers occurred after he had become a stockholder. Under these circumstances, we do not reach the merits of this issue raised by appellant—Harris.

III. *Summary.*

▮ In summary, we reach no issue on this appeal other than that of damages. We reverse the grant of summary judgment on Harris' individual claims under counts I and II. Lest our opinion be misunderstood, we do not hold that plaintiff has made out a case entitling him to damages if he is able to prove fraudulent misrepresentations or omissions by the defendants.[7] We hold only that on the record before us it cannot be said as a matter of law that Harris cannot collect damages even if he should establish the existence of the alleged fraudulent misrepresentations and omissions.

---

**7.** In order to recover any damages Harris must, on remand, prove all the elements for recovery under § 10(b) and Rule 10b–5, *see, e. g., Myzel v. Fields,* 386 F.2d 718, 733–37 (8th Cir. 1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968), or § 18(a), *see Heit v. Weitzen,* 402 F.2d 909, 914–16 (2d Cir. 1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1740, 23 L.Ed.2d 217 (1969). Among these elements is reliance by Harris upon the defendants' omissions and misrepresentations, more accurately characterized as causation in fact. *E. g., Clegg v. Conk,* 507 F.2d 1351, 1361 n. 14 (10th Cir. 1974), *petition for cert. filed,* 43 U.S. L.W. 3531 (U.S. Mar. 4, 1975) (No. 74–1096).

*See also Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972); *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 380–81 (2d Cir. 1974); *Globus v. Law Research Service, Inc.,* 418 F.2d 1276, 1291–92 (2d Cir. 1969), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970); *Werfel v. Kramarsky,* 61 F.R.D. 674, 681 (S.D.N.Y.1974); *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 353 F.Supp. 264, 274–79 (S.D.N.Y.1972), *aff'd,* 495 F.2d 228, 238–41 (2d Cir. 1974). *See generally* Note, *Reliance Requirement in Private Actions under SEC Rule 10b–5,* 88 Harv.L.Rev. 584, 587–96 (1975).