**David J. STEINBERG, on behalf of himself and all others, Plaintiff/Appellant,**

**v.**

**CHEM–TRONICS, INC., et al., Defendants/Appellees.**

No. 84–6287.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1985.

Decided April 15, 1986.

Steven J. Toll, Kohn, Milstein, Cohen & Hausfeld, Washington, D.C., for plaintiff/appellant.

David E. Monahan, Gray, Cary, Ames & Frye, San Diego, Cal., for defendants/appellees.

PER CURIAM:

Appellant Steinberg brought a class action against Chem-Tronics alleging violations of the federal securities laws. Steinberg claimed Chem-Tronics omitted material information from a January 29, 1981 public offering prospectus. On the same day, Steinberg purchased stock at the public offering price of $14.50. On February 26, 1981 Chem-Tronics issued a supplement ("sticker") to the prospectus which revealed that the company had experienced "stretch-outs and cancellations" of contracts for aircraft engine programs, and increased orders for long-range military programs which generate losses or small profits initially, and as a result expected a loss for the second quarter of fiscal year 1981, ending March 31, and significantly less net income for fiscal year 1981 than estimated in the prospectus for fiscal 1980. Following these disclaimers the price of the stock dropped approximately two dollars. Steinberg sold part of his stock and incurred a loss, as did the class he represents.

The theory of the complaint was that when the prospectus was issued Chem-Tronics knew or should have known the facts disclosed in the sticker. The defense was that the stretch-outs and cancellations and new military orders that caused the drop in expected profit occurred suddenly and with little warning after the prospectus had issued and could not reasonably have been anticipated. The jury reached a defense verdict. Steinberg appeals, claiming two evidentiary rulings constituted reversible error.

## I

Steinberg complains of a district court ruling that no evidence would be received regarding events occurring after May 10, 1981. Because the prospectus predicted Chem-Tronics' profits in the fiscal year ending September 30, 1981, Steinberg argues he should have been permitted to introduce evidence relating to the results of the company's operations period between May 10 and September 30. The excluded evidence included Chem-Tronics' third quarter report and annual report for the fiscal year ending September 30, 1981. The court also excluded two letters to shareholders by Daniel Brimm, president of Chem-Tronics, attached to the third quarter and annual reports, in which Brimm discussed the stretch-outs and cancellations that contributed to Chem-Tronics' losses for the second and third quarters of 1981. Steinberg was permitted to cross-examine Brimm for impeachment purposes on the letters.

Steinberg was also prevented from introducing evidence concerning post-May 10 fluctuations in the price of Chem-Tronics stock. He contends the exclusion of this evidence improperly limited the testimony of his accounting experts concerning the financial results of Chem-Tronics' 1981 operations.

The district court based its cut-off date of May 10 on Fed.R.Evid. 403. The district court stated, "[T]he court selected the cut-off date that was reasonably related to the issues and in my view, an extended cut-off date would have introduced further confusing factors in the consideration of the jury."

The plaintiff class consisted of those who purchased Chem-Tronics stock between the issuance of the prospectus on January 29, 1981 and the issuance of the sticker supplement on February 26, 1981, and who held that stock on February 26. May 10 was selected as the evidentiary cut-off date to

permit admission of the second quarter report of financial results of Chem-Tronics' operations, released on May 1, 1981, and to permit proof of the price to which the stock fell after allowing stockholders a reasonable time in which to decide whether to sell or hold the stock after the disclosure in the February 26 sticker of the overly optimistic estimate of future earnings. *See Nye v. Blyth Eastman Dillon & Co., Inc.,* 588 F.2d 1189, 1198 (8th Cir.1978); *Harris v. American Investment Co.,* 523 F.2d 220, 226 (8th Cir.1975).

■ The probative value of the post-May 10 evidence was slight. As to liability, Chem-Tronics conceded in the sticker that the future earnings anticipated in the initial prospectus would not be realized. The financial disappointments of the company were shown by the first and second quarter reports. The third quarter and annual reports merely confirmed that actual results were below those projected in the prospectus, as the company in the sticker had admitted they would be. Given the slight probative value of the reports themselves, the testimony of Steinberg's experts concerning those reports could have added little of value.

Similarly, the Brimm letter merely confirmed the admissions made in the sticker. It did serve to tie the president of the company directly to an explicit admission of Chem-Tronics' problems, but Steinberg accomplished this by using the letter to cross-examine Brimm.

The post-May 10 evidence was not relevant to damages. Steinberg himself sold his stock March 17 and March 18, within three weeks of the sticker release, and was not damaged by any later decline the stock may have suffered. Even those who held their stock beyond May 10 could not tie post-May 10 price changes in the stock to any false representations by Chem-Tronics. "The relevant time period [for calculating damages] is the date the [investors] no longer relied on the misrepresentations in making their investment decision," *Nye,* 588 F.2d at 1198; and, as we have seen, the May 10 cut-off date provided ample time within which the stockholders could consider and act upon the disclosure in the sticker of the misrepresentations in the prospectus.

Against this slight probative value must be weighed the inevitable tendency of the post-May 10 evidence to lengthen the trial and confuse the jury. Permitting evidence concerning the financial status of the company six months after all relevant facts were known to the public would have extended substantially an already lengthy 21-day jury trial.

We conclude the district court acted within its discretion in fixing a May 10 cut-off date.

## II

Steinberg contends the district court erroneously excluded evidence concerning quality control and production control problems experienced by Chem-Tronics prior to issuance of the January prospectus. Steinberg initially sought to amend the complaint to include quality and production control allegations, but his motion was denied. Steinberg then attempted to offer the quality and production control evidence at trial under the existing complaint but the evidence was excluded on Chem-Tronics' motion.

Steinberg does not challenge the denial of the motion to amend. Some discussion of the motion and the grounds on which it was denied is necessary, however, to an understanding of the court's treatment of the motion to exclude evidence.

Steinberg's proposed amendment would have added the allegation that the company was experiencing problems with quality and production controls to the list of material facts the complaint contended the company should have but did not disclose in the prospectus (a list which included contract stretch-outs and cancellations, increased military contracts, contemplated profits, increased costs, and decreased earnings). In denying the motion the court said, "This motion for amendment comes late, tends unnecessarily to complicate a class action

that has long been certified, as to which notices have been given with opt out privileges to the possible class members."

The motion to amend came two years after the complaint had been filed and extensive discovery had occurred, and less than ninety days before the already once postponed pre-trial conference was scheduled to be held. Moreover, as the district court pointed out, if regarded as alleging a new cause of action, the proposed amendment raised serious problems as to the adequacy of the notice procedures leading to the certification of the class. It also raised questions as to Steinberg's adequacy as a representative of the class of persons who allegedly relied on the newly alleged omission to their damage. The existence of quality and production problems was not disclosed in the sticker. It first came to light in the course of discovery. As the district court said, "[B]y the time these particular matters could have possibly come to public attention, primarily through the discovery in this case, Mr. Steinberg obviously was no longer a person who would be affected by them because he had disposed of his shares."

In denying the motion to amend, the district court indicated that in subsequent discovery Steinberg could inquire into pre-prospectus quality and production control problems if a relationship could be shown between such problems and the omissions alleged in the complaint. Steinberg continued to inquire into the existence of quality and production control problems, and by the time of trial had accumulated and proposed to offer a substantial quantity of evidence on this issue. Chem-Tronics moved to exclude this evidence. The court granted the motion.

■ Steinberg contended the evidence was relevant on two theories. The first was that the existence of pre-prospectus quality and production control problems was well known to management and the problems were a contributing cause of the post-prospectus contract stretch-outs and cancellations, and therefore Chem-Tronics should have anticipated and disclosed the contract stretch-outs and cancellations in the prospectus. The difficulty with this argument is that Steinberg was unable to point to substantial evidence of a causal relationship between pre-prospectus quality and production control problems and post-prospectus contract stretch-outs and cancellations. The district court acted within its discretion in concluding the tenuous evidence of linkage offered by Steinberg was insufficiently probative to justify admission of the large and potentially confusing body of evidence of quality and production control problems.

Steinberg's second theory of admissibility was similar to the first and fails for the same reason. Steinberg argued that pre-prospectus quality and production control problems had a direct impact on future profits, and management's knowledge of the existence of these problems established that the company knew the optimistic estimate of future profits in the prospectus was false. This theory did not require proof that quality and production control problems were causally related to contract cancellations and stretch-outs, but it did require proof of a causal relationship between quality and production control problems and the level of future profits. Chem-Tronics asserts, and Steinberg does not deny, that no evidence of such a relationship was offered. Steinberg's briefs in this court simply declare that a causal relationship was "logical," "evident," and "obvious." But the existence of production and quality control problems does not establish they were of such a nature and extent as to diminish earnings, and that Chem-Tronics should have anticipated they would do so. Moreover, without such proof, a mass of evidence merely reflecting the existence of quality and production control problems could have been more misleading than probative, tending to distract the jury from the central issues of the case. It was within the district court's discretion to exclude it.

AFFIRMED.