ALLRIGHT MISSOURI, INC., a Missouri corporation, individually and on behalf of Downtown Development Associates, Ltd., a Missouri limited partnership, Appellant,

v.

J. David BILLETER, individually and as general partner of Downtown Development Associates, Ltd., a Missouri limited partnership; Robert Bluestein, individually, and as general partner of Downtown Development Associates, Ltd.; Joseph E. Burkhardt, individually and as general partner of Downtown Development Associates, Ltd. and as general partner of Riverside Hotel Investment, Ltd., a Missouri limited partnership; Benjamin Ichinose, individually and as general partner of Downtown Development Associates, Ltd., a Missouri limited partnership; Irwin Senturia, individually, and as general partner of Downtown Development Associates, Ltd., a Missouri limited partnership; Richard H. Senturia, individually and as general partner of Downtown Development Associates, Ltd., a Missouri limited partnership, and as general partner of Riverside Hotel Investment, Ltd., a Missouri limited partnership; Commnet Financial Services, Inc.; Lawrence E. Kuder, in his capacity as Trustee for Savings Investment Service Corporation; Clayton G. Cary, Jr.; John W. Cary; J. Dennis Catalano; Ronald H. Fell; Richard H. Fendell; First King Properties, Inc.; Gail K. Fischmann; Stephanie Friedmann; Guarantee Electrical Co.; Robert Hanson and Imogene Hanson; Hoffman Partnership, Inc.; E. Dean Jarboe; Jack K. Krause; Dennis P. Long; Eugene V. Rankin; Simon Investment Trust; T & M Investment, Inc.; Richard S. Weiss; Sanford W. Weiss; Wharfside Redevelopment Corporation; The Riverside and Landing Parking System, Inc.; Burkhardt Family Trust; Robert Bluestein and Dora Bluestein; Richard H. Senturia and Ilene B. Senturia, Appellees.

Nos. 86–1476, 86–1537.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1987.

Decided Sept. 16, 1987.

Stephen G. Mirakian, Kansas City, Mo., for appellant.

Robert S. Allen, St. Louis, Mo., for appellees Burkhardt, Billeter and Ichinose.

J. Peter Schmitz, St. Louis, Mo., for appellee Commnet Financial Services, Inc.

Before LAY, Chief Judge, and ARNOLD and WOLLMAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Allright Missouri, Inc. (Allright), a Missouri corporation, appeals from a final judgment entered by the district court dismissing its claims against the defendants, 631 F.Supp. 1328. In addition, Allright also appeals several interlocutory orders decided adversely to it below. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

Allright is a limited partner in Downtown Development Associates, Ltd. (Downtown), a Missouri limited partnership formed by defendants Joseph Burkhardt and Richard Senturia in 1980 for the purpose of acquiring two city blocks of land located in an area known as Lacledes Landing in downtown St. Louis, Missouri. After the property was acquired, the general partners of Downtown[1] sold units of limited partnership interests in Downtown over the next three years to several individuals and entities.[2] Allright contends that material misrepresentations and omissions of fact were made in the sale of these interests.

In 1984, the general partners proposed a conveyance of approximately 1.3 acres of Downtown's real property to another Missouri limited partnership, Riverside Hotel Investments, Ltd. (Riverside), in exchange for a twenty percent interest in that partnership. Riverside planned to construct a three-hundred room, eight story hotel on

---

1. The general partners of Downtown, each of whom has been named as a defendant in this case, are Richard Senturia, Joseph Burkhardt, Irwin Senturia, J. David Billeter, Benjamin Ichinose, and Robert Bluestein.

2. The limited partners of Downtown are Allright, Clayton Cary, Jr., John Cary, J. Dennis Catalano, Ronald Fell, Richard H. Fendell, First King Properties, Inc., Gail Fischmann, Stephanie Friedmann, Guarantee Electrical Company, Robert Hanson and Imogene Hanson, Hoffman Partnership, Inc., E. Dean Jarboe, Jack K. Krause, Eugene V. Rankin, Simon Investment Trust, T & M Investment, Inc., Richard Weiss, and Sanford Weiss. (Dennis Long had been a limited partner in Downtown but has subsequently renounced any interest he may have had as a limited partner in Downtown.)

the site. Pursuant to the Downtown limited partnership agreement, consent of the majority-in-interest of the limited partners was needed to convey the property to Riverside inasmuch as Burkhardt and Senturia, both general partners of Downtown, initially owned, controlled, and were general partners of Riverside. At or prior to the time that Burkhardt and Senturia solicited the consent of the limited partners, they allegedly told certain limited partners, including Allright, that an additional six million dollars would be invested in Riverside and that Riverside would borrow approximately eighteen million dollars (or roughly seventy-five percent of the construction cost) for the construction of the hotel on the property. The majority-in-interest of the limited partners approved the transaction, and the transfer of the interest in the property to Riverside was completed on or about March 30, 1984. A $23,298,000 loan, secured by a mortgage on the property and by the personal guarantees of the four general partners of Riverside, was obtained from Savings Investment Service Corporation (SISCorp) for the construction of the hotel on the property. Apparently it was only after the transfer of the property to Riverside that the limited partners became aware of the fact that Burkhardt and Senturia never did seek the promised additional capitalization of Riverside and that instead of borrowing only seventy-five percent of the cost of the hotel, nearly one hundred percent of its cost had been borrowed from SISCorp. It is also alleged that only after the conveyance did the limited partners fully learn that Burkhardt and Senturia had paid the sum of $981,000 out of the initial construction loan draw as a permanent loan commitment fee for a permanent loan commitment that was nonexistent and that Burkhardt and Senturia had assessed Riverside several substantial fees payable to themselves or their affiliates, a significant portion of which was paid out of the initial construction loan draw.

After conveyance of the property, the general partners of Downtown, acting through Burkhardt and Senturia, solicited ratification of the conveyance by the limited partners but were unsuccessful. Between March 29, 1984, and July 5, 1984, Allright allegedly demanded that Downtown's general partners take whatever action necessary to recover the real property conveyed to Riverside or else to recover reasonable compensation from Burkhardt, Senturia, and/or Riverside. The general partners, though, apparently rejected Allright's demands for action.

On June 26, 1984, after construction on the hotel had already begun, Allright filed suit in federal district court, naming all the general partners and the other limited partners of Downtown as defendants. Allright later filed a First Amended Complaint on July 5, 1984, joining the mortgagee, SISCorp. Defendants subsequently moved to dismiss the complaint. Allright responded by filing a ninety-one page, sixteen count Second Amended Complaint. Count I alleged a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968 (1982), and sought treble damages against Burkhardt and Senturia; Counts II through VIII alleged a series of violations of federal securities laws and sought rescission of the transfer to Riverside; Counts IX through XI alleged violations of the Missouri securities laws and sought rescission of the conveyance to Riverside. The remaining counts were for breach of fiduciary duty, breach of the partnership agreement, dissolution and accounting, and removal of Senturia as a general partner of Downtown. Afterwards, twelve of the twenty limited partners filed a cross-claim against the general partners, adopting Allright's claims and adding additional parties and claims.[3] The district court granted defendants' motion to dismiss the federal and Missouri securities law claims on the ground that neither Allright nor the other limited partners had capacity to bring a derivative suit. The court also dismissed the other pendent

---

**3.** Together with Allright, these limited partners constitute a majority of the limited partnership interests.

state law claims without prejudice. Upon defendants' subsequent motion, the district court entered an order dismissing the RICO claim—the only count remaining—finding that Allright had failed to allege sufficient acts for there to be a pattern of racketeering activity under the statute. These appeals followed.

## I.

■ Allright's major contention is that the district court erred in ruling that Allright and the other limited partners lacked the capacity to bring their federal and Missouri securities law claims derivatively. We agree.

The starting point for our analysis is Fed.R.Civ.P. 17(b), which states:

The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of the individual's domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States * * *.

Under the plain wording of the rule, we are required to apply state law (Missouri law in this instance) to determine whether the limited partners have the capacity to bring a derivative suit. *See Klebanow v. New York Produce Exch.*, 344 F.2d 294, 296–97 (2d Cir.1965); *Engl v. Berg*, 511 F.Supp. 1146, 1152–53 (E.D.Pa.1981); *Smith v. Bader*, 458 F.Supp. 1184, 1186–87 (S.D.N.Y.1978). While Missouri courts have not directly spoken on the question, several courts in other jurisdictions have recognized the right of a limited partner to bring a derivative suit. *See, e.g., Klebanow*, 344 F.2d at 295–99; *Engl*, 511 F.Supp. at 1152–53; *McCully v. Radack*, 27 Md.App. 350,

340 A.2d 374 (Md.Ct.Spec.App.1975); *Jaffe v. Harris*, 109 Mich.App. 786, 312 N.W.2d 381 (1981); *Riviera Congress Assocs. v. Yassky*, 18 N.Y.2d 540, 223 N.E.2d 876, 277 N.Y.S.2d 386 (1966); *Strain v. Seven Hills Assocs.*, 75 A.D.2d 360, 429 N.Y.S.2d 424 (1980). These courts have tended to analogize the limited partner to those persons who traditionally have been allowed to institute legal action to protect their interests in property that is under the immediate and direct control of another person. A common analogy is to the corporate shareholder. As stated in *Klebanow:*

[I]n the main, a limited partner is more like a shareholder, often expecting a share of the profits, subordinated to general creditors, having some control over direction of the enterprise by his veto on the admission of new partners, and able to examine books and "have on demand true and full information of all things affecting the partnership ..." See N.Y. Partnership Law §§ 98, 99, 112. That the limited partner is immune to personal liability for partnership debts save for his original investment, is not thought to be an "owner" of partnership property, and does not manage the business may distinguish him from general partners but strengthens his resemblance to the stockholder; and even as to his preference in dissolution, he resembles the preferred stockholder.

344 F.2d at 297. Another frequent analogy is to a beneficiary of a trust, who under generally recognized principles of law can bring an action on behalf of the trust when the trustee is the malfeasor or has wrongfully refused to enforce a claim of the trust against an outsider. *See id.*, 344 F.2d at 297–99; *Jaffe*, 312 N.W.2d at 384; *Riviera*, 18 N.Y.2d at 547–48, 223 N.E.2d at 879–80, 277 N.Y.S.2d at 392. A compelling argument is made in these cases that if a corporate shareholder and trust beneficiary can bring a suit on behalf of the corporation or trust when the directors or trustees fail to act or were themselves the wrongdoers, there is no good reason why a limited partner should not be able to bring a suit on behalf of the limited partnership under similar circumstances.

Besides being influenced by the jurisprudence in the related areas of corporations and trusts, the court in *Klebanow* also took note of the fact that a derivative suit provides a "speedier and more effective remedy" for injury to the partnership than the traditional relief available to the limited partner of dissolution and winding up. 344 F.2d at 299. The ineffectiveness of the remedy of dissolution is illustrated by the fact that dissolution may force a limited partner to terminate a profitable investment because of the wrongdoing of a general partner; moreover, there may also be several potential tax consequences to a limited partner's taking this route, possibly making it on the whole more costly to dissolve the partnership than to tolerate the wrongdoing. *See* Note, *Procedures and Remedies in Limited Partners' Suits for Breach of the General Partners' Fiduciary Duty*, 90 Harv.L.Rev. 763, 765, 774–75 (1977). The other relief available to the limited partner, an action for an accounting of profits, can also be inadequate when there is an ongoing malfeasance by management, *id.* at 765, or when the wrongdoing is by non-partners. *See* Hecker, *Limited Partners' Derivative Suits Under the Revised Uniform Limited Partnership Act*, 33 Vand.L.Rev. 343, 350 (1980). Given the fact that the remedies of dissolution and accounting are incapable of providing effective relief for many of the wrongs that can occur to the limited partners' interest, a more potent mechanism is needed. In our estimation, the derivative suit is such a device.

■ In arguing that under Missouri law Allright and the other limited partners lack standing to bring a derivative suit, defendants refer us to a provision of Missouri's Uniform Limited Partnership Law, Mo. Ann.Stat. § 359.260 (Vernon 1968) (repealed, effective January 1, 1989), which states that "[a] contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership." The language of this provision is taken from the Uniform Limited Partnership Act, promulgated in 1916 and adopted in all but one of the fifty states. *See Hecker, supra,* at 343, 351–53. Defendants argue that this language indicates that Missouri did not recognize at the time this suit was filed the right of Allright or the other limited partners to bring a derivative suit. The court in *Klebanow* disarmed a similar attempt to use the same language in a New York statute to bar a derivative suit. 344 F.2d at 298–99. It found that while this provision could be interpreted as completely prohibiting a derivative suit, it could just as well be construed as intended to eliminate the need to join limited partners in lawsuits where the partnership is involved, and to also provide that ordinarily—but not always—general partners are to control litigation matters. *Id.* at 298. The court found that because New York law was ambiguous on this point, and since a federal right was at stake in the case, it was entitled to decide the matter in a manner that would allow the federal claim to be asserted. *Id.* at 299. State courts have subsequently expanded *Klebanow* and applied it in instances where only state law claims are at issue; these courts have construed this provision, the interpretation of which was admittedly unsettled at the time of the *Klebanow* decision, as not barring limited partner derivative suits. *See e.g., Jaffe,* 312 N.W.2d at 383–85; *Riviera,* 18 N.Y.2d at 547, 223 N.E.2d at 879, 277 N.Y.S.2d at 391; *Strain,* 429 N.Y.S.2d at 427–28. We believe that Missouri courts will adopt the approach taken by these courts.

■ Defendants further point to the actions—and for that matter inaction—by the Missouri legislature in recent years as an indication that a derivative suit is barred here. Defendants find it significant that although the National Conference of Commissioners on Uniform State Laws incorporated in the Revised Uniform Partnership Act in 1976 a provision permitting limited partner derivative suits, the Missouri legislature did not add this provision when it amended its limited partnership act in 1983. It was not until 1985 that Missouri enacted legislation expressly allowing a limited

partner to bring a derivative suit.[4] (Partnerships formed prior to January, 1987, such as Downtown, have until January 1, 1989, to elect to be governed by the revised act. Mo.Ann.Stat. § 359.641 subd. 2 (Vernon Supp.1987).) We do not find that the delay by the legislature in promulgating this provision can necessarily be construed to mean that Allright cannot bring a derivative suit at this time. A limited partner's right to bring a derivative suit had its origin at the common law, *see Klebanow*, 344 F.2d at 295–99; we therefore need not find an express legislative grant of authority in order to be able to conclude that Allright can bring this suit. The fact that the Missouri legislature did not promulgate a provision in 1983 expressly allowing this type of suit to be maintained could be interpreted a number of ways. At best, it is unclear whether the legislature actually rejected a provision allowing limited partner derivative suits. Likewise, it is also ambiguous as to what the legislature intended when it eventually did enact such a provision but with language making the provision not immediately controlling on partnerships formed before January 1987. On the one hand, this provision could be interpreted to mean that the legislature intended to bar completely any derivative action by a limited partner in a partnership formed before January 1987, until such partnership elected to be governed by the revised act. On the other, it could just as well be construed to mean that with regard to partnerships formed prior to 1987, any right to bring a derivative suit before the partnership elected to be governed by its provisions would have to be derived from the common law, and not from any statutory grant. Because the intent of the Missouri legislature is ambiguous and based on the above-mentioned reasons for allowing a derivative suit—which we believe Missouri courts would find persuasive—we will resolve these ambiguities in favor of

allowing a derivative suit to be brought in this instance.

Finally, we would be remiss if we failed to mention that a minority of courts have chosen not to follow the *Klebanow* line of cases, barring at least in some instances a limited partner from bringing a derivative suit. *See, e.g., Browning v. Maurice B. Levien & Co.*, 44 N.C.App. 701, 262 S.E.2d 355 (App.), *appeal denied*, 300 N.C. 371, 267 S.E.2d 673 (1980); *Fox v. Sackman*, 22 Wash.App. 707, 591 P.2d 855 (1979); *Amsler v. American Home Assurance Co.*, 348 So.2d 68 (Fla.Dist.Ct.App.1977), *cert. denied*, 358 So.2d 128 (Fla.1978). Allright attempts to distinguish these cases on the basis that in each the limited partner was seeking to bring a derivative suit not against the general partners (what Allright terms an insider derivative suit), but against third parties (referred to by Allright as an outsider derivative suit). Characterizing its lawsuit as an insider derivative suit since it is principally directed against the general partners of Downtown, Allright argues that the cases denying the limited partner the right to bring suit are inapplicable.[5] While these cases can perhaps be distinguished on factual grounds, we believe the better approach—and the approach the Missouri courts would follow—would be to allow the maintenance of a derivative suit without distinction as to whether it is primarily directed against insiders or third parties. In the related areas of corporations and trusts, suits by shareholders or trust beneficiaries on behalf of the corporation or trust are not barred simply because the defendants in the suit are third parties. *See* Restatement (Second) of Trusts § 282 (1959); Mo.Ann.Stat. § 507.070 (Vernon 1952) and Mo.R.Civ.P. 52.09 (no special requirements when a shareholder derivative suit is brought against third parties). Also, logic and experience would dictate that a limited partner's investment in the partnership could be harmed just as greatly through the

---

4. Mo.Ann.Stat. § 359.571 (Vernon Supp.1987) states that "[a] limited partner may bring an action in the right of a limited partnership to recover a judgment in its favor if general partners with authority to do so have refused to bring the action or if an effort to cause those

general partners to bring the action is not likely to succeed."

5. But note, however, that an outsider—the mortgagee—is a defendant in this case.

wrongful acts of third parties as it could through the actions of the general partners. As already discussed, other remedies available to the limited partners are often ineffective to remedy the harm caused to the limited partnership and the limited partner's interest therein. The adequacy of these remedies is often no better, and sometimes much worse, when outsiders are the ones guilty of the wrongdoing.

We hold that under Missouri common law Allright has the capacity to bring a limited partner derivative suit on its federal and Missouri securities law claims. We believe that Missouri courts will reject the approach taken by the minority of courts that have declined to allow limited partner derivative suits.[6]

## II.

Defendants next argue that even if a limited partner has standing to bring a derivative suit, Allright failed to comply with the requirements of Fed.R.Civ.P. 23.1 and accordingly should not be permitted to maintain this action.[7] The district court did not rule on this contention. We may consider this argument, however, inasmuch as it would provide a basis to affirm the district court's decision. *See Reeder v. Kansas City Bd. of Police Comm'rs*, 733 F.2d 543, 548 (8th Cir.1984).

Defendants begin by asserting that Allright did not allege with particularity its efforts to obtain the desired action by the general partners of Downtown. We reject this contention. The demand re-

quirement of Rule 23.1 serves the purpose of notifying management so that it can make the initial decision as to the type of action that should be taken, be it a lawsuit or some other form of corrective action, to resolve the problem at hand. *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 529–33, 104 S.Ct. 831, 835–37, 78 L.Ed.2d 645 (1984); *Allison v. General Motors Corp.*, 604 F.Supp. 1106, 1117 (D.Del.), *aff'd*, 782 F.2d 1026 (3d Cir.1985). At the very least, "a demand must identify the alleged wrongdoers, describe the factual basis of the wrongful acts and the harm caused to the [enterprise], and request remedial relief." *Allison*, 604 F.Supp. at 1117.

In paragraph 30 of its Second Amended Complaint, Allright pleaded the following facts:

(1) Between March 29, 1984, and July 5, 1984, it demanded that the general partners of Downtown take whatever action was necessary to recover Downtown's property or to recover reasonable compensation therefor from defendants Burkhardt, Senturia and/or Riverside;

(2) It reiterated its demands at a meeting for all the general partners and all of the limited partners on May 17, 1984;

(3) No action was taken by the general partners of Downtown; and

(4) Any further action would be futile since four of the six general partners of Downtown will always reject any

---

6. Our conclusion forecloses the need to address Allright's argument that its federal and state securities law claims are not exclusively derivative.

7. Fed.R.Civ.P. 23.1 states in pertinent part:

In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a

court of the United States which it would not otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association. A partnership is an unincorporated association for purposes of Rule 23.1. *See Phillips v. Kula 200*, 83 F.R.D. 533, 534 (D.Hawaii 1978).

demand because they either personally benefited or are related to general partners who have so benefited.

Assuming, as we must, that the allegations in Allright's complaint are true, *see Flowers v. Continental Grain Co.*, 775 F.2d 1051, 1052 n. 2 (8th Cir.1985), we find that Allright's demand meets the requirement of Rule 23.1. The demand identified the alleged wrongdoers (i.e., Burkhardt and Senturia); described the wrongful act at issue (i.e., the conveyance to Riverside); implicitly denoted the harm caused to the partnership (i.e., implicit in the demand was the fact that there was an improper loss of a valuable partnership asset); and made a request for remedial relief (i.e., a return of the property, or in lieu thereof, reasonable compensation from Burkhardt, Senturia, and/or Riverside). In addition, defendants' position is further weakened by the fact Allright alleged in its complaint the futility of a demand due to the close proximity of the general partners to the alleged impropriety. If a demand would be futile, it need not be made. *See, e.g., Lewis v. Curtis*, 671 F.2d 779, 784–87 (3d Cir.), *cert. denied*, 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982).

■ Defendants also assert that pursuant to Rule 23.1 Allright should have requested prior to filing this action or the Second Amended Complaint that the other limited partners, who by majority vote approved the conveyance, join in its efforts to rescind the sale. Rule 23.1 states that the plaintiff must "allege with particularity the efforts, if any, made by [him] to obtain the action [he] desires from the directors or comparable authority and, if necessary, from the shareholders or members * * *." Courts have interpreted the "if necessary" requirement to mean that the necessity of making a demand on the shareholders or members should be governed by the applicable state law. *See Jacobs v. Adams*, 601 F.2d 176, 179–80 (5th Cir.1979); *Brody v. Chem. Bank*, 482 F.2d 1111, 1114 (2d Cir.), *cert. denied*, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973); *GA Enters., Inc. v. Leisure Living Communities, Inc.*, 66 F.R.D. 123, 128 (D.Mass.1974), *aff'd*, 517 F.2d 24 (1st Cir.1975). Although this approach may have merit when the underlying substantive claim is a state law claim, its persuasiveness is weakened when a federal claim is involved, especially when the policy underlying the federal right would be defeated by applying the state shareholder demand requirement. *See* 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1832 at 122–23 (2d ed. 1986) (when a federal claim is at stake, the state shareholder demand rule should not be applied unless there is some "clear purpose" for doing so). It is clear that under Missouri law a demand must be made in the context of a shareholder derivative suit. *See Wolgin v. Simon*, 722 F.2d 389, 392 (8th Cir.1983). Nonetheless, we need not decide today whether Missouri's shareholder demand requirement applies so far as Allright's federal securities law claims are concerned, nor need we decide whether the Missouri shareholder demand requirement will be extended to limited partner derivative suits. Assuming for the sake of argument that the state shareholder demand requirement applies as a general rule to both federal and state claims brought derivatively by a limited partner in federal court, we find that a demand on the limited partners by Allright must be excused since it would be futile in this instance. Missouri courts have imposed this additional requirement to provide an opportunity for shareholder ratification of the allegedly improper act, thereby eliminating the necessity of a lawsuit. *Id.* Here, however, the limited partners have once before refused to ratify the transaction; and the pleadings reveal that a majority-in-interest of the limited partners have adopted Allright's position in this litigation, further evidencing the fact that ratification is a dead letter at this point.

■ We also reject defendants' assertion that Allright does not fairly and adequately represent the interests of the limited partners for much the same reason. Defendants argue Allright has an interest adverse to the limited partners because Allright has an option to buy all of Downtown's real property if Allright is successful in frustrating the transfer to Riverside. Defend-

ants once again ignore the fact that a majority-in-interest of the limited partners have openly supported Allright's position in this lawsuit, even to the extent of having Allright argue their position on appeal. At this point it would be disingenuous to say that Allright's position is contrary to that of the other limited partners.

We conclude that Allright has fulfilled the requirements of Rule 23.1 and thus has standing to present its federal and Missouri securities law claims.

### III.

■ In Counts II through XI (allegations that federal and state securities laws were violated), Count XIII (an allegation that Downtown's general partners breached the partnership agreement) of Allright's Second Amended Complaint, and in several counts of the cross-claims of the other limited partners of Downtown, Allright and the cross-claimants sought rescission of the conveyance to Riverside. Defendants assert as an alternative ground for upholding the dismissal of these counts that rescission is no longer an appropriate remedy because subsequent to the conveyance of the 1.5 million dollars worth of property to Riverside a twenty-four million dollar hotel was constructed on the land. This argument was the basis for Burkhardt's and Senturia's motion for summary judgment below. The district court did not rule on this motion because its other rulings eliminated the need to do so, but it did indicate that it would have granted the motion had it been necessary to address the issue.

We find that a dismissal of the claims on the basis of the inappropriateness of the requested relief would be premature at this point. First, material factual questions still exist. For example, defendants have argued that Allright should have voiced its discontent with the conveyance to Riverside at an earlier time—either during or prior to the hotel's construction. Allright, however, counters by asserting that no significant construction of the hotel had taken place at the time it first made its demand on the general partners to undo the conveyance and SISCorp had disbursed only

$3,000,000 of the $23,298,000 under the loan and deed of trust (half of which was immediately returned to it in the form of fees).

The ability to obtain restitution is generally dependent on the fact that the underlying circumstances have not materially changed. *See* Restatement of Restitution § 142(1) (1937); *American Gen. Ins. Co. v. Equitable Gen. Corp.*, 493 F.Supp. 721, 756 (E.D.Va.1980) (the premise of the remedy of rescission is "that the parties can be restored to the *status quo ante*"). The construction of the hotel on the property is clearly a change of circumstances. Nevertheless, a change of circumstances is not a defense to a claim for restitution if "the change occurred after the recipient had knowledge of the facts entitling the other to restitution and had an opportunity to make restitution." *See* Restatement, *supra*, at § 142(3); *American Gen.*, 493 F.Supp. at 757–58. A factual question thus exists whether or not defendants proceeded to construct the hotel in disregard of Allright's alleged protests. Furthermore, even if it is found that Allright cannot obtain recission, it should be able to amend its complaint to request damages. *See* Fed.R.Civ.P. 15(a) (leave is to be freely given by the court when justice so requires so that a party may amend his pleadings). Any decision on the type of relief available is ordinarily properly made at the end of trial after all of the facts and circumstances have been fully developed. *See Boggess v. Hogan*, 328 F.Supp. 1048, 1053–54 (N.D. Ill.1971). Accordingly, summary judgment on the rescission claims would be inappropriate at this time.

### IV.

■ Allright contends that the district court erred in dismissing its RICO claim against Burkhardt and Senturia for failure to allege sufficient acts to establish a pattern of racketeering activity. To establish a claim under RICO there must be "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346

(1985) (footnote omitted). We agree with the district court that a pattern of racketeering activity has not been adequately alleged here.

According to Allright, the following acts by Burkhardt and Senturia, if proven as having occurred in the manner that Allright has alleged, would constitute a pattern of racketeering activity under the Act: (1) acts of mail, wire, and securities fraud in connection with the sale of the limited partnership interests; (2) the wrongful sale of 1.3 acres of Downtown's property to Riverside in exchange for a twenty percent interest in Riverside and wrongful acts relating thereto; and (3) improper diversion of other assets to Burkhardt and Senturia and their affiliates.

We held in *Superior Oil v. Fulmer,* 785 F.2d 252, 257 (8th Cir.1986), that something more than a single scheme is required in order to establish a pattern of racketeering activity.[8] In *Superior Oil,* the defendants had engaged in several acts of fraud relating to the theft of liquid petroleum from Superior Oil's pipeline. *Id.* at 253–54. We found that such acts, amounting to what was deemed to be a single scheme to divert petroleum gas from the pipeline, failed to rise to the level of a pattern of racketeering activity. *Id.* at 257. In the present case, we agree with the district court that only a single scheme is present. Allright's allegations, if true, evince only a solitary scheme by Burkhardt and Senturia to wrongfully deprive the limited partners of their investment in the partnership. The fact that the alleged acts occurred over a number of years (from 1980 to 1984), *see,*

*e.g., Ornest v. Delaware N. Cos.,* 818 F.2d 651 (8th Cir.1987); *Deviries v. Prudential-Bache Sec., Inc.,* 805 F.2d 326, 329 (8th Cir.1986), or were directed against several individuals and entities comprising the limited partnership interests, does not dissuade us from this conclusion. Accordingly, we hold that under the mandate of *Superior Oil* and its progeny there has not been a sufficient allegation of a RICO violation. Allright's RICO claim was thus properly dismissed.

### V.

■ The district court held that after its dismissal of the federal and Missouri securities law claims, it was appropriate to dismiss the pendent state claims of Allright and the cross-claimant limited partners. Dismissed were Allright's claims (which the other limited partners subsequently adopted) for recovery for breach of the partnership agreement, breach of fiduciary duty, and its claims for equitable relief in the form of dissolution and accounting, and removal of Senturia as a general partner of Downtown.[9] Also dismissed were the other limited partners' claims for recovery from Downtown's general partners for misappropriation of partnership funds, fraud, fraudulent transfer of a portion of Downtown's property, and breach of contract, and their claim for recovery from SISCorp for its alleged negligence in extending financing to Riverside for the construction of the hotel on the property.

The doctrine of pendent jurisdiction is one of discretion, not of right. *United*

---

**8.** While the decision in *Superior Oil* has not been without its critics, *see e.g., United States v. Ianniello,* 808 F.2d 184, 192 (2d Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987); *Morgan v. Bank of Waukegan,* 804 F.2d 970, 974–76 (7th Cir.1986), it remains the law of this circuit. *See, e.g., Henning v. First City of Worthington,* No. 86–5320, slip op. at 5 n. 5 (8th Cir. July 7, 1987); *Madden v. Gluck,* 815 F.2d 1163, 1164 (8th Cir.1987) (per curiam), *cert. denied,* —— U.S. ——, 108 S.Ct. 86, 98 L.Ed.2d 48 (1987). Though Allright does not say so in so many words, for all intents and purposes, it would have us to reverse this circuit's holding in *Superior Oil.* We of course are not at liberty to overrule the decision of a

prior panel of this court. *See United States v. Lewellyn,* 723 F.2d 615, 616 (8th Cir.1983).

**9.** Included in Allright's state law claims were its claims under the Missouri securities laws. The district court did not dismiss these counts for lack of pendent jurisdiction because by this time these claims had already been dismissed on the basis that the limited partners lacked the capacity to bring these claims derivatively. As a result of our determination that Allright and the cross-claimants have the capacity to bring these claims, the district court, on remand, must consider whether such claims should be joined under the doctrine of pendent jurisdiction.

*Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Hence, even if state and federal claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding," a federal court need not in every case permit the state claims to be joined. *Id.* at 725–26, 86 S.Ct. at 1138–39. Among the factors a court should consider are: the judicial efficiency of trying the claims together; the convenience and fairness to the parties; the avoidance of needless questions of state law; the degree to which the state law claims predominate, if at all, over the federal claims; the nexus of the state claims to questions of federal policy; and the risk of jury confusion. *Id.* at 726–27, 86 S.Ct. at 1139–40. At the time that the district court dismissed the pendent claims, all that remained was the RICO count. The pendent claims were dismissed on the basis that state law issues substantially predominated the case; that such issues were basically collateral to a determination of liability under RICO; and that the risk of jury confusion on the RICO counts would be heightened with the introduction of additional evidence not pertinent to the RICO claim. Having found that Allright has failed to allege sufficient acts to support its RICO claim but that it does have standing to bring its federal securities law claims, we vacate the district court's ruling dismissing the state claims and remand for a further determination regarding the propriety of allowing the state claims to be raised in this suit.

## VI.

 Pursuant to Fed.R.Civ.P. 38(b), a party may request a jury trial as a matter of right "not later than 10 days after the service of the last pleading directed to such issue." Allright and the cross-claimants did not request a jury trial within this time period. Approximately six weeks prior to the date set for the nonjury trial, they did file a motion for a jury trial pursuant to Fed.R.Civ.P. 39(b), which provides that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues." The motion for a jury trial was made when only the RICO claim remained. The district court denied the motion, reasoning that: (1) the matters involved in the RICO count were too complex and were not "peculiarly suited to jury determination"; (2) the defendants would be prejudiced because they had prepared their case with a view toward a bench trial and a jury trial would undoubtedly mean additional preparation; and (3) the granting of a jury trial would necessitate the setting of a new trial date when the case had already been on a nonjury docket for over three months. Allright argues that the district court abused its discretion in denying the motion.

Since we find that there was no basis for a RICO claim in the facts alleged by Allright, we obviously need not reach the question of whether a jury trial should have been granted on this count. The circumstances have measurably changed since the time the motion for a jury trial was made. Whether the district court would grant a jury trial under these circumstances we cannot say. We vacate the order denying the motion for jury trial. Allright and the cross-claimants may on remand renew their request, making their argument in light of these changed circumstances. It will be within the sound discretion of the district court to grant or deny this motion.[10]

---

**10.** Allright also contends that the district court erred in denying several of its discovery requests. We find no abuse of discretion. *See Voegeli v. Lewis,* 568 F.2d 89, 96 (8th Cir.1977). Several of Allright's discovery requests called for information outside of the scope of the lawsuit or for information not discoverable under the federal rules absent a showing of compelling need. The other discovery requests were in the form of interrogatories. Although these requests were denied, the district court did permit Allright to depose other individuals who could supply the information Allright sought. Under the circumstances, this was reasonable.

## VII.

Finally, although the district court did not address this point, Community Investment Services Corporation (Commnet), the transferee of the mortgagee SISCorp,[11] has argued that because Allright and the cross-claimants have failed to state a claim against it, it should be dismissed from the case. Commnet overlooks the fact, though, that pursuant to Fed.R.Civ.P. 19(a) it cannot be dismissed at this time because it is a necessary party. According to Rule 19(a):

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

Allright and the cross-claimants requested rescission of the conveyance and cancellation of the deed of trust. Obviously, should the district court permit rescission, Commnet must be a party to the case so that complete relief can be granted and so that Commnet would have an opportunity to protect its interests. Moreover, even if other relief is awarded, such as traditional legal damages or rescissional damages, Commnet's interest may also be impaired.[12]

## VIII.

In conclusion, we reverse the dismissal of the federal and Missouri securities law claims on the basis that Allright and the cross-claimants are entitled to bring a limited partner derivative suit under Missouri law. We affirm the dismissal of the RICO claims and the district court's rulings on Allright's discovery requests. We further hold that the requirements of Fed.R.Civ.P. 23.1 have been met; that dismissal on the ground that rescission is an improper remedy would be premature at this point; and that Commnet, as transferee of the mortgagee, should not be dismissed from the case at this time since it is a necessary party to this litigation. We vacate the dismissal of the state law claims and the district court's denial of Allright's motion for a jury trial and remand for further proceedings in accordance with our resolution of the issues.

This court's mandate shall issue forthwith.

---

**11.** After SISCorp was dismissed from the case by the district court, but before the remaining RICO claim was ultimately dismissed against Burkhardt and Senturia, SISCorp transferred all of its right, title and interest in the mortgage and the debt which it secures to Commnet, a Florida Corporation. Since SISCorp claims no further interest in the note and deed of trust, Commnet has argued in its place in this appeal.

**12.** Besides rescission, the cross-claimants have also sought damages from the mortgagee for its alleged negligence in extending financing to Riverside.